UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARISE FOR SOCIAL JUSTICE; ¿OISTE?; NEW ENGLAND STATE-AREA CONFERENCE OF THE NAACP; REV. TALBERT W. SWAN, II; NORMAN W. OLIVER; DARLENE ANDERSON; GUMERSINDO GOMEZ; FRANK BUNTIN; RAFAEL RODRIQUEZ; and DIANA NURSE | ) ) ) ) ) ) ) ) | |
| | ) | Civil Action No. 05-30080-MAP |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF SPRINGFIELD and SPRINGFIELD ELECTION COMMISSION | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT

Defendants, City of Springfield and Springfield Election Commission, hereby respond to the Plaintiffs' Complaint as follows:

### Preliminary Statement

1.

In answer to paragraph 1, Defendants admit only that the official 2000 United States Census provided that 19.6 percent of the total population of the City of Springfield identified themselves as Black/African-American (alone); 27.2 percent identified themselves as Hispanic/Latino (regardless of race); and 4.3 percent identified themselves as some other race or as two or more races. According to the 2000 Census, 18.1 percent of the voting age population of the City of Springfield identified themselves as Black/African-American (alone), and 21.8

47339

percent identified themselves as Hispanic/Latino (regardless of race), and 4.0 percent identified themselves as some other race or two or more races. Defendants deny, however, all other allegations, representations, and interpretations in paragraph 1. Upon information and belief, Defendants deny that the at-large method of electing members to the Springfield City Council ("City Council") and Springfield School Committee ("School Committee") dilutes or abridges the voting rights of Black/African-American or Hispanic/Latino persons or otherwise prevents them from electing representatives of their choice in violation of the Section 2 of the Voting Rights Act, 42 U.S.C. 1973 ("Section 2 ) or the Fifteenth Amendment. To the extent that "equal voting power" can be interpreted to require that every elector's vote is accorded the same weight, Defendants deny that votes cast by the individually named Plaintiffs or any other member of a racial or ethnic minority group are not accorded the same weight as are the votes cast by every other elector. Defendants' further deny that Section 2 can be interpreted to guarantee the election of an equal – or even a proportional – number of representatives of choice of voters who are a members of any racial, ethnic, or language minority group. Defendants deny that the at-large method of electing members of the Springfield City Council and School Committee violates the Equal Protection Clause on the grounds that it does not constitute a racial classification. All lawfully registered voters of the City of Springfield are subject to the same requirements, provisions, requisites, processes, and procedures with regard to the election of members to the City Council and School Committee. Defendants further deny that the 1961 adoption and subsequent maintenance of the at-large method of electing members to the City Council and the 1961 adoption and subsequent maintenance of the at-large method of electing members to the School Committee were motivated by an intent to discriminate against members

of a racial or ethnic minority group; or to abridge their right to vote; or to dilute their voting strength and deny them a reasonable opportunity to elect candidates of choice. Defendants finally deny that Plaintiffs are entitled to "injunctive or declaratory relief prohibiting the further utilization of an at-large system for electing members of the Springfield City Council and School Committee."

## Jurisdiction and Venue

### 2.

Paragraph 2 is a jurisdictional statement and, as such, the burden rests with the Plaintiffs.

### 3.

In answer to paragraph 3, Defendants admit that venue is proper in the United States District Court of Massachusetts.

## Parties

### 4.

In answer to paragraph 4, Defendants represent that they have insufficient facts to admit or deny Plaintiffs' claims regarding the status of "Arise for Social Justice, Inc." as a non-profit organization, its date of establishment, its purpose, and its goals and pursuits. Defendants represent that they have insufficient facts to admit or deny the reason Plaintiffs decided to bring this Section 2 challenge. Defendants, however, deny that the at-large method of electing members to the School Committee and the City Council fails to provide to all of the citizens an "equal opportunity to participate in the political process and to elect representatives of their

choice." Defendants further assert that "the votes of Black/African-American and Hispanic voters are given equal weight [as] the votes of white voters"

5.

In answer to paragraph 5, Defendants represent that they have insufficient facts to admit or deny Plaintiffs' claims regarding the status of "¿OISTE?" as a non-profit organization, its purpose, and its goals and pursuits, principle place of business and field offices, and the residence and voter registration status of its members.

6.

In answer to paragraph 6, Defendants represent that they have insufficient facts to admit or deny Plaintiffs' claims regarding the status of the National Association for the Advancement of Colored People ("NAACP") as the "oldest civil rights organization," its date of establishment, and its purpose, goals, pursuits, achievements, or its history.  Defendants further have insufficient facts to admit or deny the role of the New England State-Area Conference of the NAACP with regard to the activities of the New England branches of the organization or its goals, programs, and policies. Defendants do admit that the NAACP is a civil rights organization with a long history of advocating for the rights of African-Americans, equality of treatment, and programs that support the socio-economic advancement of African-Americans in this country.

7.

In answer to paragraph 7, Defendants admit that the name of Talbert Swan appears on the voter registration roles for Springfield, Massachusetts. Voter registration roles do not include information pertaining to the race or ethnicity of the registrant, therefore Defendants have

4

insufficient official record information to admit or deny that Rev. Talbert W. Swan, II is an African-American citizen of the United States. Defendants further represent that they have insufficient facts to either admit or deny that he is currently a resident of Springfield, Massachusetts.

8.

In answer to paragraph 8, Defendants admit that the name of Norman Oliver appears on the voter registration roles for Springfield, Massachusetts. Voter registration roles do not include information pertaining to the race or ethnicity of the registrant, therefore Defendants have insufficient official record information to admit or deny that Mr. Norman W. Oliver is an African-American citizen of the United States. Defendants further represent that they have insufficient facts to either admit or deny that he is currently a resident of Springfield, Massachusetts.

9.

In answer to paragraph 9, Defendants admit that the name of Gumersindo Gomez appears on the voter registration roles for Springfield, Massachusetts. Voter registration roles do not include information pertaining to the race or ethnicity of the registrant, therefore Defendants have insufficient official record information to admit or deny that Mr. Gumersindo Gomez is Latino citizen of the United States. Defendants further represent that they have insufficient facts to either admit or deny that he is currently a resident of Springfield, Massachusetts.

10.

In answer to paragraph 10, Defendants admit that the name of Darlene Anderson appears on the voter registration roles for Springfield, Massachusetts. Voter registration roles do not

include information pertaining to the race or ethnicity of the registrant, therefore Defendants

have insufficient official record information to admit or deny that Ms. Darlene Anderson is an

African-American citizen of the United States. Defendants further represent that they have

insufficient facts to either admit or deny that she is currently a resident of Springfield,

Massachusetts                           .

11.

In answer to paragraph 11, Defendants admit that the name of Frank Buntin appears on

the voter registration roles for Springfield, Massachusetts. Voter registration roles do not include

information pertaining to the race or ethnicity of the registrant, therefore Defendants have

insufficient official record information to admit or deny that Mr. Frank Buntin is an African-

American citizen of the United States. Defendants further represent that they have insufficient

facts to either admit or deny that he is currently a resident of Springfield, Massachusetts.

12.

In answer to paragraph 12, Defendants admit that the name of Rafael Rodriquez appears

on the voter registration roles for Springfield, Massachusetts; there are several registrants with

the name of Rafael Rodriquez. Voter registration roles do not include information pertaining to

the race or ethnicity of the registrant, therefore Defendants have insufficient official record

information to admit or deny that Mr. Rafael Rodriquez is Latino citizen of the United States.

Defendants further represent that they have insufficient facts to either admit or deny that he is

currently a resident of Springfield, Massachusetts.

13.

In answer to paragraph 13, Defendants admit that the name of Diana Nurse appears on the voter registration roles for Springfield, Massachusetts. Voter registration roles do not include information pertaining to the race or ethnicity of the registrant, therefore Defendants have insufficient official record information to admit or deny that Ms. Nurse is a Black/Hispanic citizen of the United States. Defendants further represent that they have insufficient facts to either admit or deny that she is currently a resident of Springfield, Massachusetts.

14.

Defendants admit that the town of Springfield was incorporated in 1641 and became a municipality in 1852 and is located in the Commonwealth of Massachusetts. Defendants further admit that the Eleventh Amendment's grant of immunity to States and state agencies from suit in federal court is inapplicable to local governmental subdivisions, such as the City of Springfield. Defendants, however, deny that members of the City Council and the School Committee are elected *"bi-annually"* and any other interpretation of the Plaintiffs' claims in paragraph 14 except as follows: all nine members of the City Council are elected *biennially* in odd-numbered years. Members of the City Council serve two-year terms. Members of the School Committee serve four-year staggered terms. Three of the six members of the School Committee are elected every two years in odd-numbered years. Elections for School Committee and City Council are at large, citywide.

15.

In answer to paragraph 15, Defendants admit that among the duties of the Springfield Election Commission is that of ensuring that elections are properly "managed and conducted"

7

pursuant to applicable city, state, and federal laws, regulations, and constitutional provisions. Defendants admit that the Election Office staff assists the Election Commission in the execution of its duties, responsibilities, and authority. M.C.L. c. 51, §16A.

## Facts

### 16.

In answer to paragraph 16, Defendants admit that the 2000 United States Census provided that the City of Springfield had a total population of 152,082 of whom 48.8 percent identified themselves as non-Hispanic white persons; 19.6 percent identified themselves as Black/African-American ("alone') persons and 27.2 percent identified themselves as Hispanic/Latino (regardless of race) persons.

### 17.

Defendants admit the claims in paragraph 17 to the extent that they can be interpreted to mean that 2000 Census reported 25,578 fewer persons identifying themselves as non-Hispanic white, 233 more persons identified themselves as Black/African-American ("alone"), and 14,815 more persons identified themselves as Hispanic (regardless of race) than had in the 1990 Census in the City of Springfield. Defendants admit that the 2000 Census reported that 43.8 percent of the voting age population identified themselves as one of the following: Black/African-American (alone), Asian (alone), American Indian and Alaska Native (alone), Native Hawaiian and other Pacific Islander (alone), some other race or two or more races, or as Hispanic/Latino (regardless of race).

8

18.

Defendants represent that they have insufficient facts to either admit or deny the representations in paragraph 18. Defendants have been informed by the United States Census Bureau that estimates of total population by race or ethnic group are available for Hampden County; but only total population is available for the City of Springfield. Further, Defendants represent that they have insufficient information to either admit or deny the accuracy of such data, which is "formula driven" using the 2000 Census data as a base and various administrative records, in addition to birth, death, and migration rates, to determine the estimates. Defendants do admit, however, that the number of registered voters in the precincts in which Hispanic/Latino voting age persons (regardless of race), constitute more than 60 percent of the total (according to the 2000 Census) seems to support Plaintiffs' representation of an increase in the proportion of Hispanic/Latino persons in the City of Springfield since the 2000 and/or an undercount in the 2000 Census. Defendants admit that the official 2000 Census reported that 51.2 percent of the total population identified themselves as one of the following: Black/African-American (alone), Asian (alone), American Indian and Alaska Native (alone), Native Hawaiian and other Pacific Islander (alone), some other race or two or more races, or as Hispanic/Latino (regardless of race)

19.

Defendants deny that "Springfield has the second largest Black/African-American and Hispanic population in Massachusetts." Defendants represent that according to the 2000 Census, as among the following municipalities: Boston, Brockton, Cambridge, Chelsea, Fall River, Fitchburg, Framingham, Holyoke, Lawrence, Lowell, Malden, Lynn, New Bedford, Randolph, Salem, Somerville, Springfield, Waltham, and Worcester, the second largest number and the

9

third highest proportion of persons identifying themselves as Black/African-Americans ("alone") were reported to reside in Springfield. As among the same municipalities, the 2000 Census reported that the third largest number and the fourth highest proportion of persons identifying themselves as Hispanic/Latino (regardless of race) were reported to reside in Springfield. Defendants admit that according to the 2000 Census, those identifying themselves as non-Hispanic Black/African-American ("alone") constituted the second largest racial group – second to those identifying themselves as non-Hispanic white persons. According to the 2000 Census, those identifying themselves as Hispanic/Latino (regardless of race) in Springfield constituted the second most numerous group as compared to the following (non-Hispanic) racial groups: White (alone), Black/African-American (alone), Asian (alone), American Indian and Alaska Native (alone), Native Hawaiian and other Pacific Islander (alone), and some other race or two or more races.

20.

In answer to paragraph 20, Defendants represent that they have insufficient facts to admit or deny Plaintiffs' claims regarding the citizenship rate for or the "heritage" of Hispanic/Latino persons residing in the City of Springfield.

21.

Defendants admit that the Springfield City Council is composed of nine members, all of whom are elected for two-year, non-staggered terms. Defendants admit that electors may cast a ballot for as many as nine candidates. Defendants admit that the nine candidates receiving the greatest number of votes are elected. Accordingly, such elections could be described as

"*winners*-take-all." As to the remaining statements in paragraph 21, Defendants represent that have insufficient knowledge to admit or deny these claims, except to assert that Defendants deny that the at-large method of electing members to a governing body is "outdated." Defendants further deny that the "*winners*-take-all" elections are "outdated." Rather, it is the most commonly used method of identifying "winners" in single-member district, multi-member district, and mixed methods of election. With regard to Plaintiffs' representation regarding the prohibition against the use of an at-large method for the election of *all* federal "officials," Defendants deny that Congress outlawed at-large elections for the United States Senate. Defendants admit that the enactment of PL 90-196, which prohibited the use of at-large or multi-member district elections for the United States House of Representatives by states entitled to more than one seat in the House of Representatives was motivated, *in part*, by congressional concern that some of the southern states, in the wake of the passage of the Voting Rights Act, would abandon their single-member district method of electing members of the House of Representatives and adopt at-large elections, which would dilute the voting strength of newly franchised Black/African-Americans. Defendants assert, however, that incumbency protection and the difficulties that states encountered in redistricting also motivated the passage of PL 90-196. Finally, Defendants deny that any concern about the dilution that would result from the conduct of at-large, statewide elections for the United States House of Representatives 40 years ago is relevant to an evaluation of the electoral opportunities that the at-large method of electing members to the Springfield City Council and the School Committee provide to Black/African-American and Hispanic/Latino voters in 2005.

22.

Defendants admit the representations in paragraph 22 to the extent that they can be interpreted to provide that one Black/African-American and one Hispanic/Latino currently serve on the Springfield City Council, when according to the 2000 Census, non-Hispanic Black/Hispanics represent 18.1 percent of the voting age population and Hispanic/Latinos (regardless of race) represent 21.8 percent of the voting age population. Upon information and belief, Defendants assert that since 1963 the following four Black/African-Americans have been elected to the Springfield City Council: Paul R. Mason (1968-1973; 1978-1983); Morris Jones (1985-1993); Bud L. Williams (1994-present) and Carol Lewis-Caulton (2000-2001). Jose F. Tosado (2003-present) is the first Hispanic/Latino to be elected to the Springfield City Council. Upon information and belief Defendants assert that Defendants deny that there is any official Census data that supports the Plaintiffs' claim that the "people of color" comprise more than 55 percent of the City's total population – assuming that "people of color" include all those persons who did not report on the 2000 Census that they were non-Hispanic white ("alone").

23.

In answer to paragraph 23, Defendants admit that currently four of the nine members of the Springfield City Council reside in Ward 7; two members reside in Ward 5, two members reside in Ward 6, and one member resides in Ward 2. With regard to the residence of the members of the Springfield City Council beginning in 1990, Defendants further assert that the official registration records indicate that prior to 1998, either two or three of the members of the Springfield City Council resided in Ward 7. Defendants further admit that according to the 2000 Census, Ward 7 has the highest proportion of non-Hispanic white voting age persons. Defendants,

however, represent that they have insufficient facts to admit or deny Plaintiffs' claim regarding

the number of white voters or the average or median household income of such persons who are

registered to vote in Ward 7, because registration records for the City of Springfield do not

include information about household income or about membership in a racial, ethnic, or language

minority group. Defendants deny, however, that while the residence in one of the City's eight

wards of the members of Springfield City Council or School Committee may have some

relevance with regard to political considerations favoring (or disfavoring) a change to a single-

member district method of election, "residency" is not relevant to a Section 2 challenge.

24.

In answer to paragraph 24, Defendants deny that there are any persons residing in any of

the wards or any member of any racial, ethnic, or language minority group who have no

representation on the City Council. Since all members are elected at large, all members of the

City Council represent every ward, and every member of any and all racial, ethnic, or language

minority groups equally. Defendants deny Plaintiffs' characterization regarding the

demographics of Wards 1, 3, 4, and 8, except to the extent the 2000 Census provided that all those

persons who identified themselves as Black/African-American (alone), Asian (alone), American

Indian and Alaska Native (alone), Native Hawaiian and other Pacific Islander (alone), some other

race or two or more races, or as Hispanic/Latino (regardless of race) comprised at least 60 percent

of the voting age population in Wards 1, 3, and 4; while those who identified themselves as non-

Hispanic white (alone) comprised at least 60 percent of the voting age population in Wards 2, 5,

6, 7, and 8. Defendants admit that in the last ten years there have been no City Councilmembers

who have resided in Wards 1, 3, 4, and 8. Defendants further assert that during the period of

13

time beginning in 1990, there were no Councilmembers who resided in either Wards 3 or 8. During the past ten years, a total of three candidates who resided in Ward 1, and no candidates who resided in either Wards 3, 4, or 8 ran for the Springfield City Council. During that same period of time, at least five candidates competing for a position of the City Council in each of the succeeding elections, resided in Ward 7.

25.

In answer to paragraph 25, Defendants represent that they have insufficient facts to admit or deny the allegations in paragraph 25 due in part to the lack of specificity and vagueness of the words used to describe the success of Black/African-American and Hispanic candidates. The official election returns for the City of Springfield are the best evidence of the degree to which candidates have enjoyed the support of voters residing in particular precincts. Moreover, if it is true that Black/African-American and Hispanics candidates have "w[on] or rank[ed] highly in five of the city's eight wards," then such candidates necessarily received substantial white vote from two wards in which white voting age persons constituted at least 60 percent of the voting age population, according to the 2000 Census.

26.

In answer to paragraph 26, Defendants represent that they have insufficient facts to admit or deny the Plaintiffs' representation that "additional Black/African-American and Hispanic candidates would likely be elected to the City Council and to the School Committee" if candidates were elected from "wards." Defendants deny that "minority candidates would have more equal opportunity to compete in wards throughout the city" on the grounds that any single-member district in which non-Hispanic white voting age persons comprise more than 56.2 percent of the

14

voting age population would not provide an opportunity to elect candidates of choice equal to the opportunity provided to minority persons in the present at-large method of election -- assuming, but not admitting to -- the existence of legally significant racial bloc voting.   It remains the Plaintiffs' burden to prove that non-Hispanic white voters consistently prefer different candidates than  Black/African-American voters and/or Hispanic/Latino voters.

27.

In answer to paragraph 27, Defendants admit that the School Committee is comprised of six members, all of whom are elected at large for four-year, staggered terms. Defendants further admit that voters may cast a ballot for as many as three candidates and that the three candidates receiving the greatest number of votes are elected.  Defendants admit that currently five members of the School Committee are non-Hispanic white persons and one member is Black/African-American person.  Upon information and belief, the Defendants assert that the following Black-African-American persons have been elected to and served on the School Committee: Dr. Walter English (1972-1976), Rev. Ronald Peters (1980-1986), Candice Lopes (1988-1992), Robert McCollum (1990-2000; 2002-2004); and Marjorie Hurst (1998-precent).  Since that time, the following Hispanic/Latinos have been elected and served on the Springfield School Committee: Carmen Rosa (1994-1998) and Jose Tosado (2000-2001).

28.

In answer to paragraph 28, Defendants admit that members of the Springfield School Committee serve two-year staggered terms. Defendants, however, deny that staggered terms by definition provide "white voters who bloc vote. . .a greater opportunity to determine winners." Whether staggered terms advantage white voters depends on a number of considerations

15

including the nature and degree of racial bloc voting and the proportion of white voters comprising the election districts. Defendants, however, deny that the method of electing members to the School Committee that includes staggered terms has denied Black/African-American and Hispanic/Latino persons the opportunity to elect candidates of choice   Defendants admit that official records (October 1, 2004) of the Springfield Public School System provide that 0.2 percent of the K-12 school population identified themselves as Native American; 2.5 percent identified themselves as Asian; 27.9 percent identified themselves as African American, 49.9 percent identified themselves as Hispanic, and 19.5 percent identified themselves as white. Defendants, however, deny that demographics of the public school population has any legal relevance to a Section 2 challenge to the method by which the governing board of a school district is elected.

29.

In answer to paragraph 29, Defendants admit that the 2000 Census provided that 56.2 percent of the voting age population in the City of Springfield identified themselves as non-Hispanic white, but deny any other interpretation of Plaintiffs' claim that "approximately 55 [percent] of the eligible voting age population. . .in Springfield *has been* white" (emphasis added). According to the 1990 Census, the non-Hispanic white population was reported to constitute 69.6 percent of the total voting age population. In preceding years the proportion of white persons was even greater as compared to minority persons. Defendants do not have sufficient facts, analysis, and information to admit or deny the existence of racial bloc voting or the allegation that "viable minority candidates" have been defeated but for the existence of "racially polarized voting." Defendants do deny that voting is sufficiently polarized as to deny

16

Black/African-American and Hispanic/Latino voters the ability to elect *any* representatives of their choice or that they have otherwise been shut out of the electoral process. In order to prevail on a Section 2 claim, the Plaintiffs will have to establish that African-Americans and Hispanics are politically cohesive – either separately or together – and that the white majority votes sufficiently as a bloc to enable it, in the absence of special circumstances, usually to defeat the minority's preferred candidate.

30.

In answer to paragraph 30, Defendants represent that they have insufficient facts to admit or deny whether "candidates of color are discouraged from running for City Council and School Committee because of a history of racially polarized voting." Likewise, Defendants deny that a successful campaign for a position on the School Committee or the City Council need be "costly," where there are door-to-door methods of campaigning that have proven very effective. Defendants further deny that the "operation of the winner take all" election system should be a deterrent to candidates who represent a group in the minority. Defendants admit that, as a general matter, as compared to at-large elections, it is easier, less costly, less time-consuming to campaign in a single-member district – particularly where the majority of the population in the district shares racial, ethnic, socio-economic, political, or religious attributes in common with the candidate. Defendants deny, however, that Section 2 guarantees *easier* election campaigns or assures success, where the minority group has not otherwise been excluded from the electoral process.

17

31.

In answer to paragraph 31, Defendants represent that they have insufficient information and have not conducted appropriate assessment to admit or deny Plaintiffs' claims that Black/African-American and Hispanic voters are "sufficiently numerous and geographically compact to create several districts for both the City Council and School Committee with a significant majority of minority individuals of voting age." It remains Plaintiffs' burden to prove that *each* minority group is sufficiently large and geographically compact to constitute a majority in more than one single-member district. In order to aggregate non-Hispanic Black/African-Americans (alone or in combination with other racial groups) and Hispanic/Latinos (regardless of race) populations to prove "numerosity," Plaintiffs must show that non-Hispanic/African-Americans and Hispanic/Latino are politically cohesive, i.e., vote together as a bloc and prefer the same candidates. Defendants further have insufficient evidence to admit or deny Plaintiffs' claim that a hypothetical, undefined single-member district method of election would automatically provide for "greater and genuine" opportunities to elect candidates of choice. Defendants, however, admit that single- and multi-member districts to remedy a Section 2 violation have proven an effective means of providing for the election of minority candidates, who had erstwhile little or no access to the political process.

32.

Defendants represent that they have insufficient facts and have not conducted the appropriate analysis to admit or deny Plaintiffs' claim that Black/African-American persons and Hispanic persons in Springfield "vote cohesively" – either separately or collectively. Defendants, however, deny Plaintiffs' representation in paragraph 32, to the extent that it can be interpreted as

18

claiming that "[t]he white population of Springfield votes cohesively. . .to defeat the [*all of the*]
electoral preferences of Springfield's minority voters." As an example, a review of the results of
the most recent election contest (2003) for City Council disclosed that the successful
Hispanic/Latino candidate for the City Council, Jose Tosado, "won" (was among the nine
candidates receiving the most votes) 65.8 percent of the 38 majority white precincts. Mr. Tosado
placed third in total votes received in the 2003 City Council election. It remains Plaintiffs'
burden to prove the existence of legally significant racial bloc voting and to refute evidence that
other factors, apart from racial bias, caused the white bloc voting.

33.

To the extent that Plaintiffs' claims in Paragraph 33 can be interpreted to allege that
"white" and "minority" voters *consistently* prefer different candidates, Defendants deny this
claim, which remains Plaintiffs' burden to establish. Defendants represent that they have not
conducted the appropriate analysis or collected the facts needed to estimate the frequency or
degree to which white and minority voters prefer different candidates. To the extent that
Plaintiffs' claims in Paragraph 33 should be interpreted to represent that a voter's residence in a
particular ward or precinct is dispositive or predictive of his/her electoral choices, Defendants
deny that a voter's residence, neighborhood, or assignment to an election district, precinct, or
ward is relevant to a Section 2 inquiry or is necessarily prophetic of his/her electoral preferences.

34.

In answer to paragraph 34, Defendants deny that there are any "threshold" or any other
kind of "requirements" for electoral success that advantage or apply to "white candidates" that are
not available to Black/African-American or Hispanic/Latino candidates. In Springfield School

19

Committee and City Council elections, success is determined by the number of votes received, i.e., the "popular vote." Every elector's vote has the same weight or value as does the vote of every other elector. To the extent that Plaintiffs' claims can be interpreted to describe Springfield's election scheme as assigning all of the votes of a district, precinct, political subdivision, or state to the candidate receiving the majority of votes from that district, precinct, political subdivision, or state, Defendants deny this representation. Defendants have insufficient information and have not conducted any analysis to admit or deny whether it is numerically possible for white candidates to be successfully elected in a citywide election without "carrying" any predominately "minority" precincts." Upon information and belief, no white candidate has been elected who has not "won" (been among those nine candidates receiving the most votes) at least one – and generally many more – minority-majority precinct(s). Defendants have insufficient information and have not conducted any analysis to admit or deny whether it is numerically possible for Black/African-American and Hispanic candidates to be successfully elected in a citywide election without "winning" a "significant number of white precincts. Defendants do assert that the turn-out rates among Black/African-American and Hispanic/Latino voters have been lower than that of non-Hispanic white voters would require that a successful minority-preferred candidate receive support in the white precincts – and/or encourage minority voters to turn-out to vote. Finally, Plaintiffs' assertion appears to assume the existence of legally significant racially polarized voting patterns – an assertion or assumption as to which the Defendants do not have sufficient information either to admit or deny.

20

35.

In response to paragraph 35, Defendants represent that they do not have sufficient information to admit or deny that Black/African-Americans and Hispanics share "common interests around education, jobs, health care, housing, culture and areas of commerce." Nor have Defendants conducted the kind of assessment necessary to admit or deny that "a large majority of such minority population lives in similar and contiguous neighborhoods," although given that the City of Springfield is 32 square miles in area with a population density of 4,737.7 persons per square mile, according to the 2000 Census, it is likely that there is certain contiguity among the various neighborhoods of Springfield. Nevertheless, to the extent that Plaintiffs are contending that Black/African-American persons and Hispanic persons are political cohesive in the aggregate, proof of these commonalities remain the Plaintiffs' burden.

36.

In answer to paragraph 36, Defendants admit that over the past ten years there have been requests to adopt a method of election that included the election of some or all City Councilmembers from single member districts. Defendants represent, that they have insufficient facts to admit or deny the motivation of those individuals who have addressed the City Council or the School Committee requesting a change from the at-large method of election to a single-member district method of election. Upon information and belief, Defendants, however, deny that the current at-large method of election dilutes the minority voting strength in violation of Section 2 or that Black/ African-American and/or Hispanic/Latino electors are unable to elect candidates of choice

21

37.

In answer to paragraph 37, Defendants admit that Springfield City Council voted to reject a change from the existing at-large method to a method of election that included the election of some or all of the members of the City Council from single- or multi-member districts. The absence of any evidence of minority vote dilution in addition to other considerations informed the City Council and School Committee's decision not to adopt a method of election that included single-member districts. Defendants deny that 58 percent of those casting a ballot in the 1997 election supported the a "ballot initiative. . .calling for ward elections and an end to the at-large voting system. Rather, official election records provide that 51.4 percent of those casting a ballot supported the ballot initiative to which the Plaintiffs refer. Defendants further deny that the ballot initiative "called for an end to the at-large voting system." The initiative (Referendum Question 1) proposed a mixed method whereby eight members would be elected from each of the City's eight wards and three members would be elected at-large. This was not a ballot initiative that received much attention during the 1997 election, in which the voter turn-out was 26.5 percent of the total registered voters for the City of Springfield – of which 23.3 percent of the registered voters expressed a preference as to the proposed change in the method of election for and the size of the City Council. Only 13.6 percent of the registered voters in the City of Springfield supported the initiative proposing a mixed method of election for the Springfield City Council. Accordingly, the vote on this initiative failed to receive the requisite one-third support of the registered voter population to constitute a *binding* referendum. M.G.L. c. 43, §42. Defendants represent that they have insufficient facts to either admit or deny whether members of the

22

Springfield City Council have made "election season pledges" to adopt a single-member district method of electing members to the City Council; and if so, whether those who made such representations were among the members of the City Council to vote against a change to the existing method of electing members to the Springfield City Council.

38.

In answer to paragraph 38, Defendants admit that on March 7, 2005, the City Council voted against submitting the question of "changing the City Council's at-large election system to a binding referendum vote." Defendants, however, deny any implication that any ballot initiative in 2005 would have been different or somehow automatically binding by designation in contrast to the vote in 1997. The ballot initiative vote in 1997 and any other such initiatives or referenda do not become binding unless one-third of the registered electorate supported the initiative or referendum M.G.L. c. 43, § 42. Defendants deny that the rejection of sending the question of adopting a single-member district method of election was motivated by any intent to dilute the voting strength of Black/African-American and Hispanic/Latino voters or to deny them a reasonable opportunity to elect candidates of choice. Defendants further represent that Plaintiffs had/have available to them several petition alternatives that would place the initiative, requiring a change in method of electing members to the Springfield City Council and School Committee, on the ballot or call for a special election pursuant to M.G.L. c.43, §§37-42 or Mass. G.L. c.43 §§129-134, but that does not require the assent of the City Council.

39.

In answer to paragraph 39, upon information and belief, Defendants deny that there has ever been a judicial determination that the City of Springfield has engaged in a "*long-standing*

23

history of discrimination" or discriminatory practices and policies. Defendants do not deny, however, that as a general matter, Black/African-Americans or Hispanic/Latinos persons have been subject to *de facto* discrimination in the City of Springfield or that in the past race relations within the City of Springfield have been strained or that they cannot be improved in the future. While Defendants admit that the 2000 Census indicated that the socio-economic circumstances of Black/African-Americans and Hispanic/Latinos are lower than are those of Non-Hispanic white persons, Defendants deny that these conditions are a direct result of any official discrimination that the City has perpetrated or practiced, or in which the City has participated. Most importantly, the Defendants deny that the City has engaged in discriminatory practices, endorsed discriminatory policies, or enacted discriminatory laws and regulations related to voting. Indeed, the registration rate in those precincts in which Black/African-Americans and precincts in which Hispanic/Latinos constitute at least 60 percent of the voting age population (according to the 2000 Census) demonstrate that the current and past registration practices and procedures of the City of Springfield have been equally open to – if not encouraged – minority persons to register to vote.

40.

Upon information and belief, Defendants deny that the at-large method of electing members to the City Council and the School Committee has diluted the voting strength of the individually named Plaintiffs or other Black/African-American and Hispanic voters; failed to provide "an equal opportunity to participate in the political process and to elect representatives of their preference;" and otherwise has abridged the right of the Plaintiffs and other Black/African-American and Hispanics persons to vote "on account of race, color, or ethnicity." Proof of a "totality of circumstances" that results in the denial of an equal opportunity "to participate in the

24

political process and to elect representatives of their choice" remains the Plaintiffs' burden under Section 2 of the Voting Rights Act.

41

In answer to paragraph 41, Defendants deny that Plaintiffs will suffer harm as a result of the maintenance of an at-large method of election for members of the City Council and School Committee.

**CLAIMS**

**Count I: Violation of the Voting Rights Act, 42 U.S.C. 1973**

42.

Defendants incorporate by reference their responses, as provided above,  to the Plaintiffs' allegations and representation of the relevant "facts" and circumstances set forth in their Complaint.

43.

Upon information and belief, Defendants deny that the at-large method of electing members to the City Council and the School Committee dilutes the voting strength of Black/African-American and Hispanic residents of Springfield.  Upon information and belief, Defendants further deny that the at-large method of election fails to provide "an equal opportunity to participate in the political process and to elect representatives of their choice" or  results in a denial or abridgement the right of the Plaintiffs and other Black/African-American and Hispanics persons to vote "on account of race, color, or ethnicity" in violation of Section 2 of the Voting Rights Act.

25

**Count II: Violation of the Equal Protection Clause of the Fourteenth Amendment**

44.

Defendants incorporate by reference their responses, as provided above, to the Plaintiffs' allegations and representation of the relevant "facts" and circumstances set forth in their Complaint.

45.

Defendants deny that the "maintenance" of at-large method of electing members to the City Council and School Committee deprives of Black/African-Americans and Hispanic persons of an equal opportunity to elect representatives of their choice by "diluting the weight of their votes in violation of the Equal Protection Clause of the Fourteenth Amendment" of the United States Constitution. Defendants deny that the "winner-take-all" election scheme that provides that the nine City Council and the three School Committee candidates receiving the greatest number of votes are elected denies Black/African-American and Hispanic/Latino persons an equal opportunity to elect candidates of choice or otherwise dilutes the "weight" of their vote. Defendants deny that the 1961 adoption of the at-large method of electing members to the City Council and to the School Committee was motivated by an intent to discriminate against Black/African-American, Hispanic, or any other minority voters, to dilute their respective voting strengths, to deny them an equal opportunity to elect candidates of choice, or to abridge their political access or respective electoral voices. Defendants deny that the at-large method of electing members to the City Council and the School Committee violates the Equal Protection Clause by impermissibly classifying person based upon race, ethnicity, or membership in a language minority

26

group. Defendants deny that Black/African-American and Hispanics persons are in any way prohibited from participating in the electoral process "on an equal basis with white voters."

## Count III: Violation of the Fifteenth Amendment

46.

Defendants incorporate by reference their responses, as provided above, to the Plaintiffs' allegations and representation of the relevant "facts" and circumstances set forth in their Complaint.

47.

Upon information and belief Defendants deny that the at-large method of electing members to the City Council or to the School Committee "deprives or abridges the individual plaintiffs' and other Black/African-American and Hispanic voters' right to vote as guaranteed under the Fifteenth Amendment" of the United States Constitution. Defendants deny that a "winner-take-all method of identifying the "winners" is discriminatory. Defendants further deny that the use of staggered terms in the election of members to the School Committee abridges the right of Black/African-Americans and Hispanics to cast a meaningful vote. Defendants deny that at-large method of electing members to the City Council and to the School Committee or any other practice or policy enacted or implemented by the City of Springfield denies the Plaintiffs or any other qualified voter who is a member of a minority group the right to vote.

## DEFENSES

**Defendants assert the following defenses**:

### First Affirmative Defense.

Defendants represent that Plaintiffs' Complaint does not assert adequate factual grounds to sustain an Equal Protection violation. Plaintiffs have not claimed – nor could they – that the at-large method of electing members to the Springfield City Council and School Committee constitutes a racial classification that is neither narrowly tailored nor supported by a compelling governmental justification.

### Second Affirmative Defense

Defendants represent that Plaintiffs' Complaint does not assert adequate factual grounds to sustain a constitutional challenge to the at-large method of electing members to the Springfield City Council and School Board. Plaintiffs have not claimed – nor could they – that the at-large method of electing members to the Springfield City Council and School Committee was adopted and maintained "because of" its adverse effects" on Black/Black/African-American and Hispanic/Latino voters who resided in the City of Springfield in the 1960s and who today reside in the City.

### Third Affirmative Defense.

Defendants represent that Plaintiffs do not assert adequate factual grounds to support a finding by this Court of a violation of Section 2 of the Voting Rights Act.

A) The long history of successful minority candidacies for Springfield City Council and School Committee during period of time when non-minority persons constituted more than 70 percent of the voting age population refutes any claim that white persons vote as a bloc to consistently defeat candidates of choice of minority voters.

28

(i). The extent that non-minority persons have not supported candidates of choice of Black/African-American and/or Hispanic/Latino voters has not been motivated by racial bias

(ii) There has been sufficient white cross-over voting coupled with single-shot voting to provide to Black/African-American and/or Hispanic/Latino a reasonable opportunity to elect candidates of choice

B) There has been few judicial determinations in the country, none in the State of Massachusetts, and no evidence in the City of Springfield that Black/African-Americans and Hispanic/Latino voters are politically cohesive in the aggregate   .

C) Plaintiffs' Complaint does not support a "practical evaluation of the past and present realities" through a "functional view of the political process," that demonstrates a violation of Section 2 of the Voting Rights Act. While there is no requirement that Plaintiffs prove the existence of a particular number of these "Senate factors," they are indispensable to any "totality of the circumstances" inquiry and a determination of whether the political process is equally open to minority persons.

### Fourth Affirmative Defense

Assuming – but not admitting to – the existence of racial bloc voting, Plaintiffs must show

that there exists a constitutional remedy that provides for more opportunities than have been or will

be provided by the at-large method of election, which resulted – at a minimum – in the election of ·

one Black/African-American and one Hispanic/Latino candidate of choice and that does not

require the governing body to alter its size. Holder v. Hall, 512 U.S. 25 (1993)

A) Without proof that Black/African-American and Hispanic/Latino vote together as a bloc and prefer the same candidates, an appropriate remedy for a finding of dilution as to the Springfield School Committee would be the creation of an election scheme the facilitated the election of two Black/African-American candidates of choice and two Hispanic/Latino candidates choice pursuant to a method of election or redistricting plan that provided for the election of a six-member School Committee and that did not constitute a racial classification that was not narrowly tailored to address a compelling justification.

B) Without proof that Black/African-American and Hispanic/Latino vote together as a bloc and prefer the same candidates, an appropriate remedy for a finding of dilution as to the Springfield City Council would be the creation of an election scheme the facilitated the

29

election of two Black/African-American candidates of choice and two Hispanic/Latino candidates pursuant to a method of election or redistricting plan that provided for the election of a nine-member City Council and that did not constitute a racial classification that was not narrowly tailored to address a compelling justification.

## Fifth Affirmative Defense

Since minority-preferred candidates have been elected for the 37 years since the adoption of at-large method of electing members to the Springfield City Council and the 44 years since the adoption of the at-large method of electing members to the Springfield School Committee, it appears that Plaintiffs are predicating their claim of dilution on the failure of the at-large method of election to elect Black/African-American candidates and Hispanic/Latino candidates in numbers proportional (or over-proportional) to their share of the population. Section 2 does not entitle Plaintiffs to proportional representation; mandate that candidates of choice share the same racial or ethnic characteristics of the voter; provide for an "easy" campaign that assures success, obviates the need for minority voters to turn-out to vote at a rate comparable to the non-minority voters, precludes the requirement of addressing the needs of all the potential voters of the City of Springfield or forming political coalitions; or prescribes descriptive rather than substantive representation.

## Sixth Affirmative Defense

The Plaintiffs' Complaint must be dismissed for failure to state a claim upon which relief can be granted.

47339

30

## RELIEF

WHEREFORE, Defendants request that this Court deny any and all of the relief that the Plaintiffs seek.

1. Defendants request this Court to deny Plaintiffs' claims that the at-large method of electing members to the City Council and the School Committee violates Section 2 of the Voting Rights Act or the Fourteenth and/or Fifteenth Amendments of the United States Constitution.

2. Defendants request this Court to deny Plaintiffs' request for preliminary or permanent relief enjoining the City from conducting future elections for the Springfield City Council or the School Committee "utilizing the at-large voting system with its winner-take-all method." In the absence of proof that the at-large method of electing members to the City Council and the School Committee violates either Section 2 of the Voting Rights Act or the United States Constitution, the Court should not order the City to adopt a single-member, multi-member, or mixed method of election or any other form of "proportional representation" or "a modified fair vote method for multi-member districts."

3. Accordingly, Defendants request the Court to deny the Plaintiffs' request that this Court retain jurisdiction.

4. Defendants request that this Court deny Plaintiffs' claim for attorneys' fees, costs and other expenses of bringing and prosecuting this action.

5. Defendants request that this Court deny Plaintiffs' request for "such other and further relief."

31

47339

Respectfully submitted,

CITY OF SPRINGFIELD AND
SPRINGFIELD ELECTION COMMISSION


By _____
Patrick J. Markey (BBO # 563542)
    City Solicitor
Deanne Bogan Ross (BBO #555407)
City of Springfield
Law Department
36 Court Street, Room 210
Springfield, Massachusetts 01103

47339

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Answer to Plaintiffs' Complaint has been served on the following counsel of record on the 9th day of May, 2005, by first-class mail and facsimile:

Nadine Cohen
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
OF THE BOSTON BAR ASSOCIATION
294 Washington Street, Suite 443
Boston, Massachusetts 02108

Paul E. Nemser
J. Anthony Downs
William J. Connolly III
GOODWIN PROCTOR LLP
Exchange Place
53 State Street
Boston, MA 02109

Angelo Ciccolo
Victor L. Goode
NAACP
4805 Mt. Hope Drive
Baltimore, Maryland 21215-3297


_____
Patrick J. Markey
City of Springfield
Law Department
36 Court Street, Room 210
Springfield, Massachusetts 01103

47339