UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISE FOR SOCIAL JUSTICE; ¿OISTE?; NEW ENGLAND STATE-AREA CONFERENCE OF THE NAACP; REV. TALBERT W. SWAN, II; NORMAN W. OLIVER; DARLENE ANDERSON; GUMERSINDO GOMEZ; FRANK BUNTIN; RAFAEL RODRIQUEZ; and DIANA NURSE<br>           Plaintiffs,<br>v.<br><br>CITY OF SPRINGFIELD and SPRINGFIELD ELECTION COMMISSION<br>           Defendants. | Civil Action No. 05-30080-MAP |

**OPPOSITION TO MOTION FOR LEAVE TO RESPOND**

Now come the Defendants in the above-captioned case, and OPPOSE the Plaintiffs' motion for leave to respond.

As grounds therefore Defendants state that Plaintiffs have refused to provide assurances to witnesses for the Defendant that they will not face political repercussions or retaliation for signing declarations on behalf of the City. While this court may not have the authority to force the Plaintiffs to communicate such information to the witnesses, in order to assure that witnesses will not be discouraged from providing testimony on behalf of the City, the Defendants respectfully request that the court consider all reasonable and appropriate measures to minimize the detrimental impact upon the preparation for trial and defense of this matter that has occurred as a result of the manner of releasing the allegations concerning Michelle Webber contained in the Affidavit of Cheryl Coakley-Rivera, as the trial of this matter goes forward.

1

Plaintiffs, while not refuting the wrongfulness of the premature disclosure Plaintiffs' Attorneys, in their proposed response, apparently blame the manner of release on the witness, Attorney and State Representative Cheryl Coakly-Rivera. (Plaintiff's Motion for leave, Exhibit 1, p. 2, ¶ 2). Based on the facts and circumstances described in the Pleadings, Plaintiffs' attorneys, even if they did not intentionally seek to prejudice the City's defense of this case, knew or should have known of the potential impact on the adjudication of this matter, and through carelessness and inadvertence failed to take reasonable steps to prevent it.

Plaintiffs' claim that the fact that this is a bench trial, should excuse such conduct, and that there is no "scrap" of evidence of any prejudice, (Plaintiffs' Motion for leave, p. 4, ¶ 6) is disingenuous at best as the Defendants have set forth the evidence that they are unable to obtain signatures, will likely need to subpoena witnesses, and have expended and will continue to expend time investigating the allegations in an employment law context, rather than preparation for trial in this case, to say nothing of the hours which have been devoted to the series of motions associated with the controversy created.

It was reasonable for defense counsel to assume that electronic filings under the name of Paul Nemser which began at 5:20 P.M. and continued until approximately 9:30 P.M., indicated that Attorney Nemser was in his office and would have the courtesy of a return phone call. It was not known that he had left the office at 5:00 P.M. and left the responsibility of filing the Affidavits under his name to one of several other lawyers at his firm working under his direction. Moreover, such circumstances would not excuse him from the responsibilities with regard to the circumstances of filing of the Affidavit and preventing untimely public release prior to filing.

Furthermore, for Plaintiffs to argue that the allegations concerning Ms. Webber are relevant to a "totality of circumstances" inquiry evidences lack of knowledge about the legislative history of the Voting Rights Act and the nature of the evidence that has supported findings that an electoral process is not equally open to participation by members of a minority group. Thornburg v. Gingles, 478 U.S. 30, 45 (1986). Indeed, Plaintiffs' efforts to equate remarks allegedly made within an employment context to one or two persons trivializes the history of official discrimination to which African Americans in South or Native Americans residing most anywhere to which they were "relocated" (as but couple of examples) were subject. Section 2 of the Voting Rights Act, 42 U.S.C. 1973 ("Section 2") was never intended to remedy "racial insensitivity," (Motion for leave Exhibit 1 at 4, ¶7) -- however unfortunate and unacceptable -- but rather was intended to provide a remedy where the interaction between a history of discrimination that touched upon the rights of minority persons to register or to vote and an electoral scheme denied minority persons a reasonable opportunity to participate in the political process.

Plaintiffs' reliance upon language in Vecinos De Barrio Uno v. City of Holyoke, 72 F.3d 973, 987 (1st Cir. 1995) is equally misplaced. The First Circuit rejected the City of Holyoke's argument that low voter turnout negates political cohesion – an argument that Defendants have never made and do not otherwise endorse. The Court determined that low voter turnout may be probative of vote dilution where its genesis or it cause was a history of discrimination. The "perceptions" of minority persons, (Plaintiffs' Motion for leave Exhibit 1 at 4, , ¶7), as a group, may be relevant if it is shown that there is a causal link to a pattern and practice of official discrimination that touched on the rights of

3

members of that group to participate in the political process. On the other hand, the perceptions of a handful of City employees and an elected official about the alleged "racial insensitivity" of an employee of the City Mayor's office does not constitute evidence (even under the most expansive interpretation of the "totality of circumstances" inquiry) that accounts for or explains voter apathy and low voter turnout among minority persons in Springfield or that provides evidence of a history of discrimination or even a pattern or practice of "racial hostility." Id. Indeed, until Rep. Coakley-Rivera's premature release of the statement in advance of its being filed with the Court, there is no reason to believe that the public or the various minority communities even knew who the Mayor had appointed as Chief of Staff or, more particularly, knew of the concerns of some other of the City employees as to that individual. Ms. Webber does not have any role in the administration of elections or the registration of voters. She does not serve as a poll official and the alleged statements do not speak, on behalf of the Mayor, with regard to voting or election matters. It is completely ludicrous to argue that the statements allegedly made by Ms. Webber are relevant to an inquiry related to "cause" of the lack of political engagement or the perception of a lack of electoral empowerment of more than one-half of the City's voting age population..

Plaintiffs further argue that Ms. Webber's remarks are relevant to a determination of the degree to which elected officials are responsive to the particularized issues and concerns of the minority communities in Springfield citing Thornburg v. Gingles, 478 U.S. at 45. Surely Plaintiffs cannot honestly claim that a reasonable interpretation of the Gingles is inquiry relates to any elected officials other than those whose method of election has been challenged. Ms. Webber, as Chief of Staff, acts as the Mayor's office

4

manager; the Mayor appointed her, she reports to the Mayor and the Mayor, alone, can discipline her. She does not report to any other individual, department, committee, agency – and certainly not to the City Council or the School Committee.

A determination of non-responsiveness is intended to provide supportive evidence that the method by which a governing body is elected has not resulted in the election of candidates of choices of minority voters or even candidates who are committed to addressing the needs of a minority community. Congress never intended by the 1982 Amendments to the Voting Rights Act, to authorize a free-wheeling inquiry into the degree to which every elected official in a jurisdiction is responsive to the needs of members of the minority community in an effort to show that the method by which a handful of officials are elected is dilutive. If this was the stardard, trials would devolve into an inquiry of every insensitive remark make by any appointee. As such This would, indeed, render the scope of admissible proof a "Serbonian bog" of a dimension unimagined by Judge Selya. See <u>Vecinos De Barrio Uno</u> v. <u>City of Holyoke</u>, 72 F.3d at 977. Simple legal precepts require a causal link; the Voting Rights Act requires no less.

What Plaintiffs attempt to is to allow this legitimate inquiry into the method by which members of the City Council and the School Committee are elected as a means and a forum for issues wholly unrelated to the issues raised in this challenge; and to do so at the expense of the citizens of the City. The evidence in this case should stay on point to the facts of legal consequence in this matter, and not racially divisive statements unrelated to the election of City Councilors and School Committee persons.

Dated: February 8, 2007

        Respectfully submitted.

        S/S

        _____
        Edward M. Pikula, BBO #399770
        City Solicitor
        CITY OF SPRINGFIELD LAW DEPATMENT
        36 Court Street
        Springfield, Massachusetts 01103
        Telephone:    (413) 787-6085
        Telefax:    (413) 787-6173

### **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Appearance has been served on the following counsel of record on the 8th day of February 2007, by electronic filing

        S/S

        _____
        Edward M. Pikula, Esq.

# EXHIBIT 1

```
MessageFrom: Pikula, Edward
Sent: Wednesday, February 07, 2007 5:30 PM
To: 'Nemser, Paul E'
Subject: RE: LR 7.1 conference to narrow issues

please note in your certificate of  consultation, that i have assented with the
condtion as stated


Attorney Edward M. Pikula
City of Springfield Law Department
36 Court Street
Springfield, Massachusetts 01103
Phone: (413) 787- 6085
Fax: (413) 787- 6173


This e-mail message is generated from the City of Springfield Law Department,
and contains information that is confidential and may be privileged as an
attorney/client communication or as attorney work product. The information is
intended to be disclosed solely to the addressee(s). If you are not the intended
recipient, be aware that any disclosure, copying, distribution or use of the
contents of this email information is prohibited. If you have received this
email in error, please notify the sender by return e-mail and delete it from
your computer system.


   -----Original Message-----
   From: Nemser, Paul E [mailto:PNemser@goodwinprocter.com]
   Sent: Wednesday, February 07, 2007 4:53 PM
   To: Pikula, Edward; Deanne E.B. Ross
   Cc: Nadine Cohen
   Subject: RE: LR 7.1 conference to narrow issues


   We reject the premise of your assertions about unfair tactics. None have been
or are being employed by our side.  We won't agree to your condition.
Therefore, we will treat the motion as not assented to.
   -----Original Message-----
   From: Pikula, Edward [mailto:epikula@springfieldcityhall.com]
   Sent: Wednesday, February 07, 2007 4:44 PM
   To: Nemser, Paul E; Deanne E.B. Ross
   Cc: Nadine Cohen
   Subject: RE: LR 7.1 conference to narrow issues


   i have no problem with you responding to accusations of misconduct. i do have
a problem with you seeking to win this case with unfair tactics. I will assent
to your motion on the condition that the plaintiffs agree to conact delcarants
of the City and assuring the declarants that there will be no political
repurcussions against them or retaliation for signing their affidavit.


   Attorney Edward M. Pikula
   City of Springfield Law Department
   36 Court Street
   Springfield, Massachusetts 01103
```

# EXHIBIT 1

Phone: (413) 787- 6085
Fax: (413) 787- 6173


This e-mail message is generated from the City of Springfield Law Department, and contains information that is confidential and may be privileged as an attorney/client communication or as attorney work product. The information is intended to be disclosed solely to the addressee(s). If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this email information is prohibited. If you have received this email in error, please notify the sender by return e-mail and delete it from your computer system.


-----Original Message-----
From: Nemser, Paul E [mailto:PNemser@goodwinprocter.com]
Sent: Wednesday, February 07, 2007 3:45 PM
To: Nemser, Paul E; Pikula, Edward; Deanne E.B. Ross
Cc: Nadine Cohen
Subject: LR 7.1 conference to narrow issues


Later today we are going to be filing a motion for leave to file a reply to the opposition you filed this morning. This email is an attempt to confer pursuant to Local Rule 7.1 on the motion for leave to file a reply. Please let me know as soon as possible whether you assent to the motion to file a reply, the text of which is as follows:

Pursuant to Local Rule 7.1(B)(3), plaintiffs hereby move for leave to file a Reply to Defendants' Opposition to Plaintiffs' Motion to Set Deadline, attached hereto as Exhibit 1.

Although the Court has granted defendants an extension until February 14 to complete their trial affidavits, this Reply is necessary to refute accusations of professional misconduct and other arguments in Defendants' Opposition to Plaintiffs' Motion to Set Deadline. The Opposition is based on distortion and reckless surmise, and a response is necessary to set the record straight.

WHEREFORE, plaintiffs respectfully submit that good cause exists to grant their motion and to give them leave to file the attached Reply.




------------------------------------------------------------------------------




****************************************************************

# EXHIBIT 1

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform
you that any U.S. tax advice contained in this communication
(including any attachments) is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is intended only for the designated recipient(s). It may
contain confidential or proprietary information and may be subject to
the attorney-client privilege or other confidentiality protections.
If you are not a designated recipient, you may not review, copy or
distribute this message. If you receive this in error, please notify
the sender by reply e-mail and delete this message. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*