UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISE FOR SOCIAL JUSTICE; <br> ¿OISTE?; NEW ENGLAND STATE-AREA <br> CONFERENCE OF THE NAACP; <br> REV. TALBERT W. SWAN, II; <br> NORMAN W. OLIVER; DARLENE <br> ANDERSON; GUMERSINDO GOMEZ; <br> FRANK BUNTIN; RAFAEL RODRIQUEZ; <br> and DIANA NURSE <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SPRINGFIELD and SPRINGFIELD <br> ELECTION COMMISSION <br><br> Defendants. | Civil Action No. 05-30080-MAP |

## DEFENDANTS' AFFIDAVIT OF DIRECT TESTIMONY
## OFFICER RUBEN BORRERO,
## SPRINGFIELD POLICE DEPARTMENT

I, Officer Ruben Borrero, on oath, do hereby state as follows:

1) My name is Ruben Borrero and I have lived in Springfield since I was 10 years old. My family and I lived in the North End. I attended the High School of Commerce. am fluent in Spanish and, indeed, Spanish was spoken in my home. Both of my parents were born and grew up in Puerto Rico. My father has since returned to live in Puerto Rico. I currently live in Indian Orchard with my wife and children. My children attended the Springfield Public Schools – Central High School.

2) I had always wanted to be a police officer. After high school graduation I entered the Police Academy and served as a Police Cadet until I was 21 years old at which time I worked as a patrol officer. Currently and for the past 15 years I have worked as a crime photographer. I have worked for the Springfield Police Department for the past 31½ years.

3) For the past 15-20 years (with a few exceptions) I have served as a police officer assigned to a polling place on election day. Except for the last two years, I was assigned

to Kiley Middle School (Precinct 7F) on election day. Because I was unable to "work" in a couple of elections beginning in 2003 election, due to scheduled vacations in which I was not in Massachusetts on election day, my "position" at Kiley Middle School was assigned to another police officer. So when I "signed up" to work on election day in 2005, I was assigned to Dunbar Community Center (Precinct 3A). It is the policy of the Police Department to continue to assign a police officer to the same polling place during the time that (s)he continuously chooses to work in a polling place on election day. In that way, the police officer can develop a relationship with the poll officials and the voters and familiarize him/herself with the polling place. Many of the police officers have worked at the same polling place for significant periods of time.

4) Over the period of time, I – much like other of the police officers – have learned the various voting procedures, applicable legal requirements, functioning of the voting machines, the capabilities of the poll officials, and the needs of the voters. As a result, I have and continue to play a relatively active role in the conduct of elections. While my specific duties do not include assisting in the actual voting process, I have found it necessary where poll officials are older, where they have been unable to adequately deal with a rush of voters, where – in spite of training – they do not appear to be sufficiently well versed in the applicable voting procedures or otherwise easily confused. Because the only persons who are available and willing to serve as poll officials are elderly persons, I have made it a practice to "pitch in" sufficiently to ensure that voters are able to cast ballots that are appropriately counted. From time to time, I have had to be the one to call the Office of the Election Commission to clarify the person's status as a registered voter or to identify the polling place to which the voter was assigned.

5) At Dunbar Community Center, my ability to speak Spanish was an invaluable asset. Where there were more voters than bilingual poll officials assigned to Dunbar Community Center could reasonable assist, I helped out. I understand that the Department of Justice had told the Springfield Law Department that the assistance by Police in the polling pace is potentially intimidating and permits persons who are not as well trained to assist as the poll officials. That I am able to assist persons in Spanish is not intimidating and I am well versed in the applicable voting procedures; I have reviewed the warden handbook Moreover, I believe that what is most important is to make sure that voters are able to cast ballots; that their votes are counted; that they understand the process and alternatives available to them. In fact, voters often approach me for assistance or to explain a procedure.

6) At the 2006 primary, federal observers were assigned to Dunbar Community Center, but were not assigned to the Dunbar Community Center. I feel confident that my assistance was not perceived as an issue and that voters with limited proficiency in English were properly assisted in the voting process.

7) Often it has been necessary for me to fix the optical scanner and to explain to a voter why his/her ballot has not been counted. In fact, I am the one who tallies the votes, since poll officials – even after many years service as a poll official – are not confident of the process required to run the voted tallies at the end of election day. With the new

handicap accessible voting machines, I made sure that I was present during the training session at the polling place and insisted that various poll officials pay attention to the explanation of how the machine functioned. As it turned out, no one asked to use or needed to use the new voting machines.

8) I believe that the police in Springfield are an integral part of the election process. I think that there is always a problem recruiting poll officials with sufficient capabilities and youth and so the assignment of police officers to the polling place provides vital assistance and support to poll officials and voters. Over a period of time, voters have come to seek our assistance and feel that our presence ensures that they will have sufficient assistance to cast a ballot and that their ballot will be counted. In fact, where federal observers are assigned to a polling place and where voters have felt intimidated by observers (who are unknown to voters) and their approaching voters as they leave with questions, police have been able to intervene and reassure voters and explain to federal observers better ways to approach voters to get the information that they want. We are, after all, quite familiar to persons who regularly cast ballots in the polling places to which we are assigned.

9) While it is true that police officers receive overtime for service at polling places, I, nevertheless, believe it to be an important part of my job and provides an opportunity to interact with citizens in a setting and under far better circumstances than I routinely encounter the City's citizens as a crime photographer. I enjoy working at the polling places on election day, in spite of the long hours.

Signed under the penalties of perjury this 13 day of February, 2007

_____
Ruben Borrero

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Defendants' Affidavit of Direct Testimony Officer Ruben Borrero, Springfield Police Department" has been served on the following counsel of record on the 14th day of February 2007, via the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        Nadine Cohen, Esquire
        LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
           OF THE BOSTON BAR ASSOCIATION
        294 Washington Street, Suite 443
        Boston, Massachusetts 02108

        Paul E. Nemser, Esquire
        J. Anthony Downs, Esquire
        Monica M. Franceschini, Esq.
        GOODWIN PROCTOR LLP
        Exchange Place
        53 State Street
        Boston, Massachusetts 02109

        _/s/ Edward M. Pikula_____
        Edward M. Pikula (BBO #399770)
          City Solicitor
        Deanne Bogan Ross (BBO #555407)
        City of Springfield
        Law Department
        36 Court Street, Room 210
        Springfield, Massachusetts 01103