UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
ARISE FOR SOCIAL JUSTICE;              )
¿OISTE?; NEW ENGLAND STATE-AREA        )
CONFERENCE OF THE NAACP;               )
REV. TALBERT W. SWAN, II;              )
NORMAN W. OLIVER; DARLENE              )
ANDERSON; GUMERSINDO GOMEZ;            )
FRANK BUNTIN; RAFAEL RODRIQUEZ;        )
and DIANA NURSE                        )
                                       )
            Plaintiffs,                )   Civil Action No. 05-30080 MFP
                                       )
v.                                     )
                                       )
CITY OF SPRINGFIELD and SPRINGFIELD    )
ELECTION COMMISSION,                   )
                                       )
                                       )
            Defendants.                )
_____)

**PLAINTIFFS' EMERGENCY MOTION TO COMPEL
DOCUMENTS AND FOR PERMISSION TO INTERVIEW WITNESSES**

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1, Plaintiffs hereby move to compel Defendants to produce documents regarding complaints that various individuals have made to the City of Springfield regarding the discriminatory and racially/ethnically hostile or insensitive behavior and comments of Mayor Charles V. Ryan's former Chief of Staff, Michelle R. Webber, and the City's response to those complaints. In addition, Plaintiffs hereby move for permission to immediately interview certain City of Springfield employees who have lodged complaints with the City regarding Ms. Webber, or, in the alternative, for leave to take the depositions of those City employees who have complained about Ms. Webber's past statements and behavior.

Ms. Webber's statements and actions, complaints regarding those statements and actions, and the City's response to any such complaints are relevant to the "totality of the circumstances"

aspect of Plaintiffs' case, and in particular to whether there has been a "lack of responsiveness" to the particular needs of the minority communities in Springfield. *See Goosby v. Town of Hempstead*, 956 F. Supp. 326, 346 (E.D.N.Y., 1997); 42 U.S.C. § 1973, S. Rep., at 207. Given that trial is scheduled on March 5, 2007, one week from today, Plaintiffs require access to these documents and witnesses immediately.

I.  **Background**

In her trial affidavit in this case, State Representative Cheryl Coakley-Rivera states that Ms. Webber made racially/ethnically insensitive and/or hostile remarks to her, and that Coakley-Rivera complained to Mayor Ryan about those remarks. *See* Coakley-Rivera Aff. ¶ 42.[1] In particular, Rep. Coakley Rivera states:

> I have personally complained to Mayor Ryan about racially insensitive remarks made by his Chief of Staff, Michelle Webber. In 2004, I called to speak with the Mayor and was told by Webber that he was meeting with a "towel head." I never had heard this term before and I asked her what she meant. She explained that the Mayor was meeting with a leader from the Muslim community to discuss a recent incident in which a Muslim business owner had been stabbed to death at his store. There was a lot of concern that this incident had been racially-motivated.
>
> Shortly after this phone call, in approximately July 2004, two African American city employees complained to me about other insensitive remarks made by Webber. While in the Mayor's office, Webber told these two employees that she would not attend the Puerto Rican Day Festival because she did not want to catch AIDS.
>
> I complained to the Mayor about these incidents. To my surprise, he subsequently promoted Webber from his Aide to his Chief of Staff.
>
> More recently, in 2006, an employee in the Springfield Housing Department complained to me that Ms. Webber referred to an African American employee and a Hispanic employee as

---

[1]   Rep. Coakley-Rivera's Trial Affidavit was filed with the Court on February 2, 2007, and a substituted affidavit, correcting a date in paragraph 43, was filed on February 8, 2007.

>   "morons," and advised someone with a question to consult a white employee instead.

Coakley-Rivera Aff. ¶¶ 42-45.

When Ms. Coakley-Rivera's trial affidavit became public, it received significant publicity and attention, and, Defendants have very recently learned, apparently prompted the City to investigate complaints that other individuals have made regarding Ms. Webber. In the wake of this controversy, Ms. Webber resigned as Chief of Staff to Mayor Ryan on Wednesday, February 21, 2007. *See* Mike Plaisance, "Bias Furor Claims Aide at City Hall," *Republican*, Feb. 22, 2007 (attached hereto as Exhibit A).

Plaintiffs promptly requested that Defendants produce documents and witnesses regarding these additional complaints about Ms. Webber. On February 22, 2007, the same day that Ms. Webber's resignation was reported in the Springfield Republican, Plaintiffs formally requested the following documents:

> [C]opies of any and all documents containing formal or informal statements or complaints, made by any city employee or City of Springfield resident, regarding the comments or actions of Michelle Webber.
>
> [C]opies of any and all documents containing formal or informal statements or complaints, regarding allegations of racial or ethnic discrimination, made against any other City employee during the past year.
>
> [C]opies of any and all documents pertaining to the investigation of any of these matters.

*See* Letter from Nadine Cohen to Edward Pikula and Deanne Ross, dated February 22, 2007 (attached hereto as Exhibit B). In addition, Plaintiffs requested "to speak with city employees, including but not limited to, Rafael Nazario, Yvette Cruz, Tahon Ross, and Juan Gerena, about their experiences with Ms. Webber." *See id.*

**II.    Documents And Testimony Regarding Racially Insensitive And/Or Hostile Remarks Made By Members Of City Government Are Relevant To The "Totality Of The Circumstances" Aspect Of Plaintiffs' Case**

Defendants have refused to produce the requested documents, or to provide access to the requested witnesses, claiming that the documents and information sought are irrelevant and "private." Defendants are wrong, and have offered no credible explanation as to why the requested documents and information are irrelevant, or why they are somehow "private" documents that should be protected from discovery. Documents regarding a pattern of racially insensitive or discriminatory comments made by the Mayor's Chief of Staff are relevant to the "totality of the circumstances" component of Plaintiffs' case in several ways.

Evidence regarding complaints about Ms. Webber tends to show that communities of color *perceive* the existence of racial hostility or insensitivity in City government, and it tends to show that such hostility or insensitivity *exists*. The perception of hostility or insensitivity is relevant to such issues as whether voter turnout for people of color is affected by racial and ethnic factors, an issue that is central to this case. *See, e.g., Vecinos de Barrio Uno v. City of Holyoke*, 72 F.3d 973, 987 (1st Cir. 1995). A perceived atmosphere of racial hostility or insensitivity at City Hall could also discourage people of color from petitioning City government, encourage a sense of alienation from City government, and generally discourage their participation in the political process. The existence of hostility or insensitivity is also relevant to such issues as "whether elected officials are unresponsive to the particularized needs of the members of the minority group." *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986). More broadly, it is relevant to "the question whether the political processes are 'equally open,' which depends upon a searching practical evaluation of 'the past and present reality' and on a 'functional' view of the political process." *Id*. (quoting Senate Report) (internal citations omitted).

Here, the City government's *reaction* to complaints regarding Ms. Webber is relevant, and can illustrate the presence of "a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group." 42 U.S.C. § 1973, S. Rep., at 207; *Goosby v. Town of Hempstead*, 956 F. Supp. 326, 346 (E.D.N.Y. 1997) (holding that substantial evidence of indifference and callousness by Town Board with respect to racial intolerance and bigotry in Town government helps establish a significant lack of responsiveness); *Cottier v. City of Martin*, 2006 U.S. Dist. LEXIS 88214 at 51 (D.S.D., December 5, 2006) (finding that city's awareness of a Sheriff's perceived discrimination and mistreatment of American Indians and failure to take any remedial action indicates a lack of responsiveness); *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 1043 (D.S.D. 2004) (holding that a minority group's widespread perception that local government is generally unresponsive to their concerns has probative value in evaluating the totality of the circumstances under § 2 of the Voting Rights Act). If, for example, the requested documents and testimony reveal that no action was taken regarding various complaints made against Ms. Webber until after Rep. Coakley-Rivera's affidavit was filed, the City's inaction would indicate a significant lack of responsiveness.

In conversation with Plaintiffs' counsel, Defendants have stated that the complaints against Ms. Webber are irrelevant because she was the Mayor's Chief of Staff and the present case involves only the City Council and the School Committee. This fact, however, does not negate the relevance of the Webber complaints to the broad range of issues encompassed within the "totality of the circumstances." First, the Mayor is a member of the School Committee. Second, the perception of an atmosphere of racial hostility and insensivity at a high level within City Hall is relevant for all the reasons already stated; the City's legalistic distinction between

5

the Mayor's office, the City Council, and the School Committee would likely make very little difference to the ordinary voters who would be affected by Ms. Webber's conduct. Finally, the Senate factor concerning elected officials' lack of responsiveness is not limited to elected officials on the specific bodies whose elections are at issue under Section 2.

III. **Plaintiffs Should Be Permitted To Interview City Employees Who Have Lodged Complaints Regarding Racially Insensitive And/Or Hostile Remarks Made By Ms. Webber Or Other Members Of City Government**

In addition to refusing to produce documents, Defendants have refused to grant Plaintiffs access to the City of Springfield employees whose complaints it is now, or has recently been, investigating. Given that Plaintiffs very recently learned that the City was undertaking such an investigation, Plaintiffs could not have been expected to notice the depositions of these individuals before the formal discovery cutoff in this case. Because trial is scheduled to begin in exactly one week on March 5, 2007, Plaintiffs require immediate access to these individuals to conduct interviews and determine who they likely need to subpoena to testify at trial. Plaintiffs are not asking for unfettered access to these individuals, but rather an interview with each of them, in the presence of counsel for Defendants. In particular, Plaintiffs request interviews with: (1) Yvette Cruz (Schools Department employee); (2) Tahon Ross (Schools Department employee, who formally worked for Mayor Ryan); (3) Rafael Nazario (employed in Mayor Ryan's office); (4) Juan Gerena (employed in the Community Development Department); and (5) any other individuals who have complained to the City or to any City employee about Ms. Webber and are currently City employees.

In the alternative, Plaintiffs request that the court grant Plaintiffs leave to depose these individuals. However, given the imminence of trial, the logistics of arranging for depositions of at least four people on extremely short notice would create extreme hardship for Plaintiffs and would significantly detract from their trial preparation. In addition, any deposition transcripts

6

would likely not be available to the parties before trial commences. It would therefore be more efficient simply to conduct interviews to determine whether Plaintiffs should subpoena certain individuals to testify at trial.

### IV.   Plaintiffs' Request Is Timely

Defendants now contend that Plaintiffs have known about Ms. Webber's remarks for some time, and that Plaintiffs' request is therefore untimely. Defendants are mistaken. Plaintiffs have been aware since approximately the end of January 2007 that State Representative Cheryl Coakley-Rivera had complained to Mayor Ryan regarding Ms. Webber. However, Plaintiffs have only very recently become aware that several complaints about Ms. Webber's conduct had been lodged, that many were in writing, and that the City has likely generated responsive documents.

### V.   The Requested Documents Are Responsive To Plaintiffs' Document Requests

In addition to being relevant, the documents Plaintiffs request are responsive to Plaintiffs' May 10, 2005 First Request for the Production of Documents, which included as Request No. 1, "All documents concerning complaints, grievances, petitions, threatened lawsuits, lawsuits, or governmental investigations which allege discrimination within the City of Springfield." Defendants are under a continuing duty to supplement their responses to Plaintiffs' document requests and are therefore obligated to produce such documents. *See* Fed. R. Civ. P. 26(e).

Plaintiffs further note that Defendants have not, before now, objected that the documents called for in Request No. 1 are wholly irrelevant, as they do now. Defendants state in their Response to Plaintiffs' First Request for the Production of Documents:

> *To the extent that Plaintiffs have not limited the period of time during which such documents were generated, collected, or processed and/or otherwise limited the request to allegations of "official discrimination,"* Defendants object to this request on the grounds that it is asking for information that is irrelevant and not

7

> required by the applicable jurisprudence, will not inform the Court, and/or will not assist the Plaintiffs in meeting their burden.

*See* Defendants' Response to Plaintiffs' First Request for the Production of Documents at 4 (emphasis added). In contrast to Defendants' previously stated objection, Plaintiffs' present request is limited to allegations of "official discrimination" by members of City government, and limited in time to only those complaints made against Ms. Webber, who has reportedly only worked for Mayor Ryan since 2004, *see* Ex. A, and to complaints made against any other City employee during the past year.

\* \* \*

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

(1) Compelling Defendants to produce immediately:

    a. Copies of any and all documents containing formal or informal statements or complaints, made by any City employee or City of Springfield resident, regarding the comments or actions of Michelle Webber;

    b. Copies of any and all documents containing formal or informal statements or complaints, regarding allegations of racial or ethnic discrimination, made against any other City employee during the past year; and

    c. Copies of any and all documents pertaining to the investigation of any of these matters.

(2) Granting Plaintiffs permission to conduct witness interviews of (1) Yvette Cruz; (2) Tahon Ross; (3) Rafael Nazario; (4) Juan Gerena; and (5) any other individuals who have complained to the City or any City employee about Ms. Webber or, in the alternative, granting Plaintiffs leave to take the depositions of these individuals.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 7.1(A)(2) AND 37.1

     Pursuant to Local Rules 7.1(A)(2) and 37.1, counsel for Plaintiffs, Paul Nemser and Nadine Cohen, conferred with counsel for Defendants, Edward Pikula and Deanne Ross, on February 22, 2007 by telephone for approximately 15 minutes in a good faith attempt to resolve or narrow the issues underlying this motion. The parties were unable to reach agreement regarding the subject matter of this motion.

                       Respectfully submitted,

                       ARISE FOR SOCIAL JUSTICE; ¿OISTE?; NEW ENGLAND STATE-AREA CONFERENCE OF THE NAACP; REV. TALBERT W. SWAN, II; NORMAN W. OLIVER; DARLENE ANDERSON; GUMERSINDO GOMEZ; FRANK BUNTIN; RAFAEL RODRIQUEZ; and DIANA NURSE

                       By their attorneys,

                       /s/ Paul E. Nemser
                       Paul E. Nemser (BBO #369180)
                       Monica M. Franceschini (BBO #651208)
                       GOODWIN PROCTER LLP
                       Exchange Place
                       53 State Street
                       Boston, MA 02109
                       (617) 570-1000

                       /s/ Nadine Cohen
                       Nadine Cohen (BBO # 090040)
                       LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                       UNDER LAW OF THE BOSTON BAR ASSOCIATION
                       294 Washington Street, Suite 443
                       Boston, MA 02108
                       (617) 988-0609

Dated: February 26, 2007

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Emergency Motion to Compel Documents and for Permission to Interview Witnesses was filed electronically with this Court on this 26nd day of February, 2007 and that all parties will be served via the Court's electronic filing system.

        /s/ Paul E. Nemser
Paul E. Nemser (BBO #369180)

LIBA/1767059.2

# EXHIBIT A

Case 3:05-cv-30080-MAP    Document 135-2    Filed 02/26/2007    Page 1 of 3

masslive.com

The Republican.

## Bias furor claims aide at City Hall

Thursday, February 22, 2007
**By MIKE PLAISANCE**
mplaisance@repub.com

SPRINGFIELD - Michele R. Webber resigned as chief of staff to Mayor Charles V. Ryan yesterday nearly three weeks after a state legislator alleged in an affidavit Webber made racially hurtful comments, including calling a Muslim man a "towel head."

In a resignation letter to Ryan dated yesterday, Webber denied making the comments attributed to her, but apologized if any of her words or actions offended anyone.

Ryan declined to say whether he believed Webber did or did not make the comments, but did say the issue has prompted him to begin annual cultural sensitivity training of all municipal employees.

In a brief phone interview, Webber said she will look for work and spend time with her husband and two daughters.

"I'm shopping around, looking for other jobs. I guess I'm going to enjoy spending winter break with my kids. I also have time to clean my bathroom," said Webber, 47.

In her letter, Webber told Ryan she was leaving as chief of staff with a "heavy heart," and she tried to treat everyone with respect.

"I emphatically deny that I made racially insensitive remarks. However, to the extent that anyone may have been offended by words that I have spoken or by actions that I have taken, I apologize for that.

"I have decided, however, that it would be best for my family, and perhaps your administration as well, for me to return to my private life at this time," Webber's letter says.

Webber began as Ryan's secretary in January 2004 and he promoted her to chief of staff in April.

The last day of work for Webber, whose annual salary was $55,307, was on Feb. 14. She had been on paid administrative leave since then, Ryan said.

It was unclear whether Webber would get severance pay, said Ryan, who said the issue has made the past few weeks difficult.

"It's also been an issue that is divisive in the community and that's of concern to me because we are a very diverse city ...," Ryan said.

He wouldn't say whether he believed Webber's denial about the remarks.

"You know, I think we've really gone beyond that. I don't really think that's the issue any more. The issue is the woman has resigned," Ryan said.

It was well known in municipal government circles that Webber had alienated some members of the City Council and School Committee, City Hall employees, the press and others who called or visited the mayor's office.

Former Ryan aide Keshawn E. Dodds said in a recent interview Webber was a big reason why he left the mayor's office this year.

"My first interactions, I told the mayor candidly I thought she was a racist, but when I saw her treat whites the same way she treats black and Puerto Ricans, I came to see she just hates people," Dodds said.

Ryan was asked if he felt responsible for Webber given that she worked on his behalf and a variety of people complained about her.

"I didn't monitor, couldn't be expected to monitor, every word she said. What I said was I never heard her say anything that was racially insensitive," Ryan said.

Ryan said he hopes to appoint a chief of staff in a week or so, though he had yet to identify candidates.

Ryan also had little to say about state Rep. Cheryl A. Coakley-Rivera, D-Springfield, who included the allegations about Webber in an affidavit filed on Feb. 2 in U.S. District Court.

The affidavit was in relation to a lawsuit pending against the city over ward representation on the City Council and School Committee.

Coakley-Rivera spoke during Ryan's inauguration at Symphony Hall in January 2004.

In the affidavit, Coakley-Rivera said she phoned the mayor's office in 2004 and Webber said he was meeting with a Muslim man she called a "towel head." The legislator also said two black city employees told her that Webber said she wouldn't attend the Puerto Rican Day Festival because she didn't want to catch AIDS.

Also, Coakley-Rivera said, a city housing employee complained to Coakley-Rivera that Webber referred to a black employee and a Hispanic employee as "morons" and advised someone with a question to consult a white employee.

City Solicitor Edward M. Pikula declined comment on his investigation into the allegations.

Reporter Mary Ellen Lowney contributed to this story.

©2007 The Republican

© 2007 MassLive.com All Rights Reserved.

# EXHIBIT B



**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
OF THE BOSTON BAR ASSOCIATION**
294 WASHINGTON STREET, SUITE 443
BOSTON, MASSACHUSETTS 02108
TEL (617) 482-1145
FAX (617) 482-4392
Email: office@lawyerscom.org
Web: www.lawyerscom.org

February 22, 2007

**By Email and First Class Mail**

Edward M. Pikula, Esq.
Deanne Bogan Ross, Esq.
City of Springfield Law Department
36 Court Street
Springfield, MA 01103

Re:   <u>Arise for Social Justice et al. v. City of Springfield et al.</u>

Dear Ed and Deanne:

It has just come to our attention that there are additional people who have made complaints to the City of Springfield regarding the discriminatory and racially/ethnically hostile or insensitive behavior and comments of the Mayor's Chief of Staff, Michelle Webber. This issue is relevant to the totality of the circumstances aspect of Plaintiffs' case. We therefore request copies of any and all documents containing formal or informal statements or complaints, made by any city employee or City of Springfield resident, regarding the comments or actions of Michelle Webber. We further request copies of any and all documents containing formal or informal statements or complaints, regarding allegations of racial or ethnic discrimination, made against any other City employee during the past year. We additionally request copies of any and all documents pertaining to the investigation of any of these matters.

These documents are responsive to Plaintiffs' May 10, 2005 First Request for the Production of Documents, which included as Request No. 1, "All documents concerning complaints, grievances, petitions, threatened lawsuits, lawsuits, or governmental investigations which allege discrimination within the City of Springfield."

We also request any and all documents concerning complaints made by Orlando Santiago or anyone else, to Mayor Ryan or any other city official or entity, regarding comments of Mr. David Panagore about the North End and/or Mason Square.

In addition, Plaintiffs wish to speak with city employees, including but not limited to, Rafael Nazario, Yvette Cruz, Tahon Ross, and Juan Gerena, about their experiences with Ms. Webber.

As our trial date is fast approaching, we would like copies of these documents immediately and would like to contact the above people as soon as possible. Please let us know by Friday, February 23, 2006 if you have any objections.

Please contact us at your earliest convenience to let us know when the documents will be ready. Thank you for your prompt attention to this matter.

Very truly yours,


Nadine Cohen


cc: Paul Nemser
    Monica Franceschini
    Anna Tabor