UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISE FOR SOCIAL JUSTICE; <br> ¿OISTE?; NEW ENGLAND STATE-AREA <br> CONFERENCE OF THE NAACP; <br> REV. TALBERT W. SWAN, II; <br> NORMAN W. OLIVER; DARLENE <br> ANDERSON; GUMERSINDO GOMEZ; <br> FRANK BUNTIN; RAFAEL RODRIQUEZ; <br> and DIANA NURSE <br><br> Plaintiffs, <br> v. <br><br> CITY OF SPRINGFIELD and SPRINGFIELD <br> ELECTION COMMISSION <br><br> Defendants. | Civil Action No. 05-30080-MAP |

**MOTION TO STRIKE PORTIONS OF AFFIDAVITS
CONTAINING INADMISSIBLE LAY OPINIONS AND
SUBJECTIVE STATEMENTS CONCERNING FEELINGS
UNSUPPORTED BY OBJECTIVE FACTS**

Now come the Defendants, City of Springfield and Springfield Election Commission and respectfully move that this honorable Court allow the Defendants to strike portions of Plaintiffs affidavits containing inadmissible lay opinions and subjective statements concerning feelings that are unsupported by objective facts.

As grounds therefore Defendants state that certain affidavits filed by Plaintiffs are replete with references to lay opinions inadmissible under Federal Rules of Evidence and are unsupported by objective facts.

Such evidence is irrelevant and unrelated to Plaintiffs burden of marshalling the objective underlying facts and incidents to support their claims with regard to a violation of Section 2 of

the Voting Rights Act. The Plaintiffs cannot meet this burden through the submission of anecdotal evidence and subjective feelings or impressions as expressed in the affidavits. Moreover, absent qualification as an expert, lay opinion testimony is generally inadmissible under the Federal Rules of Evidence. Speculative opinion testimony by lay witnesses, that is, testimony not based upon the witness' perception, is generally considered inadmissible. Washington v. Department of Transportation, 8 F3d. 296 (CA 5th, 1993).

Fed.R.Civ.P. 56(e) requires that supporting affidavits "set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). "Statements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance." *Cadle Co. v. Hayes,* 116 F.3d 957, 961 (1st Cir.1997). Affidavits submitted for trial should have the same standard. "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Lay witness opinion testimony is inadmissible unless "rationally based on the perception of the witness and ... helpful to a clear understanding of the witness' testimony or the determination of the fact in issue." Fed.R.Evid. 701; *see Alexis v. McDonald's Restaurants of Mass., Inc.,* 67 F.3d 341, 347 (1st Cir.1995) (excluding conclusory lay opinion on racial animus); *Willco Kuwait (Trading) S.A.K. v. deSavary,* 843 F.2d 618, 624 (1st Cir.1988) (lay opinion suggesting little more than the result jury should reach is inadmissible). Here, the Affidavits submitted by Plaintiffs are repleat with inadmissible hearsay and inadmissible lay opinions.

By way of example (but by no means all inclusive) Defendants are highlighting herein issues in two of the Plaintiffs' affidavits solely as examples of the types of statements that appear throughout the Plaintiffs' Affidavits:

**Trial Affidavit Cheryl Coakley-Rivera**

"11.  A lot of Latino voters bullet vote for Jose Tosado alone. This is because they are misinformed about the nature of the at-large elections for City Council. They think that they only have one vote, as they do in my election. They therefore vote once only for the Latino candidate who is most well known to them – Jose Tosado, who is well known because he is an incumbent Councilor."

. . .

"41.  I have reviewed the list of 17 neighborhoods identified by the City in connection with this case. I do not believe that this list is a complete or accurate listing of the neighborhoods with which Springfield residents identify. I do not believe that a shift to a district-based system would have any effect on the role that these neighborhoods play in City life. In fact, a district-based system would eliminate the dominance that certain neighborhoods currently play in Springfield politics. Ward 7 in particular is home to several City Council and School Committee members. "

**TRIAL AFFIDAVIT OF REV. TALBERT W. SWAN**

"2.  It is very difficult for candidates of color to raise enough money to run a viable citywide campaign. Business and other sources of money are reluctant to contribute to campaigns that they think won't win. It is very difficult for candidates of color to get endorsements and positive news coverage from the Springfield newspaper. Springfield is a one newspaper town, and the newspaper can make or break a candidate. Rarely does the newspaper endorse candidates of color, and never first time candidates of color. The newspaper usually endorses only incumbents, and the incumbents are generally white. "

"3.  It is very difficult for African American and Latino candidates to get white people to support and vote for them. It hasn't been possible to win an at-large election for City Council or School Committee in Springfield without getting support from the white community. You could get all the minority votes and still not win the election unless you get a significant number of white votes."

"5.  I believe the at-large election system has made it harder for the African American and Latino communities to work together. Because it is so difficult for any candidates of color to get elected under the at large election system, the African American and Latino communities have been focused on electing their own candidates, and have less incentive to work together."

"6. In a district system where a large number of both African Americans and Latinos are concentrated in particular districts, I believe the groups would have more incentive to work together. On a district level candidates run against each other, and this will help to create coalitions between African Americans and Latinos where the groups come together to elect a minority candidate."

"17. Funding from Springfield's Health and Human Services Department and from the department of Community Development goes disproportionately to white entities. There are clear disparities in funding for minority-based agencies."

"19. There is a history of employment discrimination in the City of Springfield, particularly within the police and fire departments and within the school department. Recently it was revealed that Black school principals were being paid less than comparable white principals. There has been very little promotion of African Americans throughout the city, and there are very few supervisory police officers and firefighters."

"21. New development in Springfield is focused on the downtown areas and the entertainment district and not on the communities of color. Western New England College gives directions in its brochure that deliberately avoid Springfield's neighborhoods. The Basketball Hall of Fame, originally located in the heart of the African American community at Springfield College, was moved into the downtown area, with a special exit off the highway so as to avoid the neighborhoods of color."

"22. There is a history of redlining in Springfield and a history of mortgage lending discrimination by banks resulting in lower homeownership rates for African Americans and Latinos. When African Americans do buy homes, they are most often in African American neighborhoods with lower home values. This impacts the ability of people of color to accumulate wealth, which would provide them greater opportunity to run for citywide office."

"24. Public housing developments in white neighborhoods are also in much better condition than the public housing in communities of color. For instance, the Allen Park Senior housing development in predominantly white Forest Park is in much better condition than other public housing."

"32. Crime in the minority communities is ignored whereas crime in the downtown areas it is of grave concern to the city. When, as happens often, there are gunshots in the African American community we hear nothing from the Mayor. When there was a shooting in the quadrangle area downtown, the Mayor held a press conference. When a Latino storeowner was murdered there was no mention of it by the Mayor. When a white storeowner was murdered downtown, the Mayor beefed up police presence and authorized the use of unlimited overtime."

Similarly unsupported opinions or recitations of "facts" with no foundation are contained in virtually every affidavit proffered by the Plaintiffs in this matter. The Defendants intend to continue to raise this objection going forward as to other witnesses.

The Defendants respectfully request that the cited paragraphs within Ms. Coakley-Rivera's and Reverend Swan's affidavit, and other Affidavits submitted by the Plaintiffs, be stricken as inadmissible.

Respectfully submitted.

_____
Edward M. Pikula BBO #399770
City Solicitor
CITY OF SPRINGFIELD LAW DEPATMENT
36 Court Street
Springfield, Massachusetts 01103
Telephone:       (413) 787-6085
Telefax:         (413) 787-6173

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been served on the following counsel of record pursuant to the electronic case filing the 5th day of March 2007.

_____
Edward M. Pikula, Esq.