UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISE FOR SOCIAL JUSTICE; | ) |
| ¿OISTE?; NEW ENGLAND STATE-AREA | ) |
| CONFERENCE OF THE NAACP; | ) |
| REV. TALBERT W. SWAN, II; | ) |
| NORMAN W. OLIVER; DARLENE | ) |
| ANDERSON; GUMERSINDO GOMEZ; | ) |
| FRANK BUNTIN; RAFAEL RODRIQUEZ; | ) |
| and DIANA NURSE | ) Civil Action No. 05-30080-MAP |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF SPRINGFIELD and SPRINGFIELD | ) |
| ELECTION COMMISSION | ) |
| | ) |
| Defendants. | ) |
| ——————————————————— | ) |

**DEFENDANTS REPORT TO COURT WITH
REGARD TO PENDING HOME RULE LEGISLATION**

NOW COME THE DEFENDANTS and report to this honorable court, pursuant to the

court order of March 16, 2007 with regard to status of the Home Rule Petition pending before

the State Legislature.

I. Information Received from Legislators

Counsel for Defendants reports that all members of the City's Legislative Delegation

were contacted to obtain information as to whether the legislation has been assigned a bill

number, whether it has been assigned to the appropriate joint committee responsible for

studying the bill, the dates and times of any scheduled public hearings for the bill, (to afford the

City and any citizens the opportunity to express their views and discuss the merits of the bill) as

well as  any information as to the anticipated schedule for various readings, placement on the

Calendar and anticipated debate, likelihood as to passage, and enactment of the bill and signature by the Governor.

In response to the correspondence, emails, faxes, and phone calls, Defense Counsel was contacted by the following representatives with the following information:

1.    STATE SENATOR STEPHEN J. BUONICONTI:

DISTRICT REPRESENTED: HAMPDEN — Chicopee, ward 2, precincts A to D, inclusive, ward 4, precincts A to C, inclusive, ward 5, precincts A and B, and Springfield, wards 1, 3 and 4, ward 5, precincts A and B, ward 6, and Agawam and West Springfield.

In a phone call from Senator Bouniconti he reiterated the comments made in the newspaper article (Attached as Ex. A) indicating that controversial bills, particularly ones that split local delegations typically die before they get to a vote.

2.    SENATOR GALE D. CANDARAS:

DISTRICT REPRESENTED: FIRST HAMPDEN AND HAMPSHIRE. — Springfield, ward 2, ward 5, precincts C to H, inclusive, wards 7 and 8, East Longmeadow, Hampden, Longmeadow, Ludlow and Wilbraham, *in the county of Hampden*; and Belchertown, precincts B and C, and Granby, *in the county of Hampshire.*

In a letter faxed to the City Solicitor, Senator Candaras indicated that the petition had not, to her knowledge, been given a bill number by the House Clerk but is being referred to the Joint Committee on Election Laws.  Additionally, Senator Candaras indicated she had not "received notice of any hearings, readings or other legislative action on this measure." (Attached as Ex. B)

3.      REPRESENTATIVE MARY S. ROGENESS:

DISTRICT REPRESENTED: Second Hampden. - Consisting of precincts 3 and 4, of the town of East Longmeadow, the towns of Hampden, Longmeadow and Monson, and precincts B and C of ward 6, of the city of Springfield, all in the county of Hampden.

In a phone call responding to the Solicitor's inquiry, Representative Rogesness indicated that she was not aware of the status of the petition, and felt that Representative Swan would probably have more information.

4.      STATE REPRESENTATIVE SEAN CURRAN

DISTRICT REPRESENTED: *Ninth Hampden.* - Consisting of precincts A, B, C, D, F, G and H of ward 2, precincts C, D, G and H of ward 5, precinct H of ward 7, and precincts A, B, D and H of ward 8, of the city of Springfield, and precinct A of ward 5 of the city of Chicopee, both in the county of Hampden.

In a phone call responding to the Solicitor's inquiry, Representative Curran indicated that Representative Swan would be taking over the lead on this measure. In a follow up letter, Curran provided information that he "could not accurately give a time table as to the passage of this legislation, as its success or failure is determinative by how much political support there is for the bill." (Attached as Exhibit C)

5.      STATE REPRESENTATIVE CHERYL A. COAKLEY-RIVERA

DISTRICT REPRESENTED: Tenth Hampden. - Consisting of all precincts of ward 1, precincts B, C, F, G and H of ward 3, and precincts A, E and G of ward 6, of the city of Springfield, in the County of Hampden.

In a phone conversation, Representative Coakley-Rivera indicated that the plaintiffs had requested her support for the petition, and that she was willing to support it.

3

She further indicated that she would discuss the measure with Representative Thomas Petrolati, the Speaker Pro Tempore, whose support would be necessary to advance the measure. Representative Coakley-Rivera indicated she would let Representative Petrolati know how important this was and would seek his support for passage. She also indicated that it would be of assistance for an elected official from the City to contact Representative Petrolati. As such, the Solicitor spoke with City Councilor Jose Tosado who indicated he would contact Representative Petrolati to seek his support for the measure.   Representative Coakley-Rivera called again and said that a bill number (3963) was assigned.

6.      STATE REPRESENTATIVE BENJAMIN SWAN

DISTRICT REPRESENTED: Eleventh Hampden. - Consisting of precincts A, D and E of ward 3, all precincts of ward 4, precincts A, B, E and F of ward 5, precinct A of ward 7, and precinct C of ward 8, of the city of Springfield, in the county of Hampden.

In a newspaper article, Representative Swan indicated he was not inclined to support the measure and would not support the bill without the Plaintiffs' backing. (See Exhibit A)

In a phone call from State Representative Benjamin Swan, the Solicitor was subsequently advised that the Plaintiffs had requested the option to be able to support the "8 and 5" proposal. As such, Representative Swan contacted Representative Curran and informed him that he would be willing to take over the lead role from Curran in the advancement of this legislation.

Representative Swan indicated to the Solicitor that he would seek the support of Representative Petrolati.

7.    STATE REPRESENTATIVE ANGELO J. PUPPOLO, JR.

DISTRICT REPRESENTED: Twelfth Hampden. - Consisting of precincts 1 and 2, of the Town of East Longmeadow , precincts D, F and H of ward 6, precincts B, C, D, E, F and G of ward 7, of the City of Springfield , and the Town of Wilbraham , all in the county of Hampden .

Representative Puppolo contacted the Solicitor and provided information that the bill had not yet been assigned a number, but would be soon, and would be assigned to a committee.

8.    STATE REPRESENTATIVE JAMES T. WELCH

DISTRICT REPRESENTED: *Sixth Hampden.* - Consisting of precinct B of ward 2, precincts A, B and C of ward 4 and precinct B of ward 5, of the city of Chicopee, precinct E of ward 2 of the city of Springfield, and the town of West Springfield, all in the county of Hampden.

State Representative Welch did not respond.

9.    SPEAKER PRO-TEMPORE THOMAS M. PETROLATI

DISTRICT REPRESENTED: Seventh Hampden. - Consisting of precinct B of ward 6, of the city of Chicopee, the town of Ludlow, precincts E, F and G of ward 8, of the city of Springfield, all in the county of Hampden; and precincts B and C, of the town of Belchertown, in the county of Hampshire.

State Representative Petrolati did not respond.

II. Conversations with Plaintiffs' Counsel

Defense Counsel spoke with Plaintiffs' attorneys on March 21, 2007 and were informed that they were awaiting information as to a meeting between Representatives Swan, Coakley-Rivera, and Petrolati.

III.    Procedures Required for Passage by the Legislature.

As previously indicated, the home rule petition passed by the City Council was filed in the House and is recorded in the docket book with Docket number 3519. The clerk will number the bill and it must be assigned to the appropriate joint committee responsible for studying the bill.

According to Legislative Rules[1], the committee is composed of six senators and eleven representatives. The committee must schedule public hearings for the bill, which afford citizens, legislators and lobbyists the opportunity to express their views. Committee members meet at a later time in executive session to review the public testimony and discuss the merits of the bill before making their recommendation to the full membership of the House or Senate. The committee will then issue its report, recommending that a bill "*ought to pass*", "*ought not to pass*" or "*as changed*" and the report is submitted to the Clerk's office.

The first reading of a favorably-reported bill is automatic and occurs when the committee's report appears in the Journal of the House or Senate Clerk. Matters not requiring reference to another Joint, House or Senate committee are, following the first

---

[1] "LAWMAKING IN MASSACHUSETTS" found on the State Legislature's website: http://www.mass.gov/legis/lawmkng.htm

reading, referred without debate to the Committee on Ethics and Rules (in the Senate)[2] and to the Committee on Steering, Policy and Scheduling (in the House). Matters that relate to a city or town are automatically placed in the *Orders of the Day* (the *Calendar*) without debate, for a second reading in both branches.

Adverse reports ("*ought not to pass*") are also referred to the Committee on Ethics and Rules in the Senate or placed without debate in the *Orders of the Day* for the next session of the House. Acceptance by either branch of an adverse report is considered the final rejection of the matter. However, an adverse report can be overturned. A member may move to substitute the bill for the report, and, if the motion to substitute carries, the matter is then given its first reading and follows the same procedure as if reported favorably by committee.

After a bill takes its second reading, it is open to debate on amendments and motions. Following debate, a vote is taken and if the bill receives a favorable vote by the membership, it is ordered to a third reading and referred to the Committee on Bills in the Third Reading. This amounts to preliminary approval of the bill in that branch.

That committee examines technical points, as well as the legality and constitutionality of the measure, and ensures that it does not duplicate or contradict existing law. The committee then issues a report and returns the bill to the House or Senate for its third reading. At that time, legislators can further debate and amend the bill. Following the third reading, the body votes on "passing the bill to be engrossed."

---

[2] The Committee on Ethics and Rules advises the Senate on the order of priorities of the matters referred to it, on the urgency for consideration of such matters, and on alternative methods responding to such matters.

The bill must then pass through three readings and engrossment in the second legislative branch. Should that occur, it is sent to the Legislative Engrossing Division where it is typed on special parchment in accordance with the General Laws. However, if the second branch passes an *amended* version of the bill, the legislation returns to the original branch for a vote of concurrence in the amendment. If concurrence is rejected, a conference committee consisting of the three members from each legislative branch representing both political parties may be formed to affect a compromise piece of legislation. When a compromise is reached, the bill is sent to both legislative branches for their approval.

A vote "to enact" the bill, first in the House and later in the Senate, is the final step in the passage of a bill by the legislature. Following enactment, the bill goes to the governor, who may sign the bill into law, allow it to become law without signing it (if the governor holds the bill for ten days without taking any action while the legislature is in session, it becomes law without his or her signature), veto it, or return it to the legislature with recommended changes. If the legislature has concluded its yearly session, and the governor does not sign the bill within ten days, it dies. This is referred to as a "pocket veto." This ten-day period includes Sundays and holidays, even if they fall on the tenth day, and it begins the day after the legislation is laid on the governor's desk.

A bill signed by the governor, or passed by two-thirds of both branches over his veto, becomes a law. It is usually effective in ninety days. The day after the governor signs the bill is considered to be the first day, and each succeeding day, including Sundays and holidays is counted until the ninetieth.

Laws considered "emergency" in nature take effect immediately upon signing if the legislature has voted to attach an "emergency preamble" to the bill. Adoption of the preamble requires a two-thirds standing vote of the membership. The governor may also declare an act to be an emergency law and make it effective at once. A special act takes effect thirty days from the day it is signed, unless it contains a provision to make it effective immediately.

Pending legislation from the first term is now carried over into the second term (effective with the 1995-1996 session of the General Court). Due to the new rules established to allow the carry over of legislation from the first to the second year of a term of the General Court, legislation must be filed in either the House or Senate Clerk's prior to five o'clock on the second Wednesday of January of the first annual session of the General Court . Legislation filed subsequent to the filing deadline would thus be subject to Joint Rule 12 and would require approval by the committees on Rules of the Two Branches. Only matters filed by the Governor and matters that have local approval of a city or town would be exempt from the joint rule provision.

IV.    Local Referendum Procedure

Under the terms of the Home Rule Petition, (Attached as Exhibit D) enactment will result in a binding referendum question:

> Shall the city council of the city of Springfield be composed of thirteen members; one from each of the eight wards elected from the voters of that ward of the city and five to be elected at large from all the voters of the city; shall the School Committee of the city of Springfield be composed of seven members including the Mayor and one from each of the districts formed by the combined Wards: one and two; three and four; five and six; seven and eight; and two members to be elected at large from all the voters of the city?

Under SECTION 4 of the Home Rule Petition, If a majority of the voters voting on this binding question shall vote in the affirmative, the provisions of said act shall take effect at the next regular municipal election held in the city of Springfield.

Respectfully submitted,

CITY OF SPRINGFIELD and
SPRINGFIELD ELECTION
COMMISSION


By_____
Edward M. Pikula (BBO #399770)
    City Solicitor
Deanne Bogan Ross (BBO #555407)
City of Springfield
Law Department
36 Court Street, Room 210
Springfield, Massachusetts 01103


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appearance has been served on the following counsel of record on the 21st day of March 2007, by electronic filing

_____

# EXHIBIT A



## The Republican.

# Voting rights trial may be halted

Saturday, March 17, 2007

**By STEPHANIE BARRY**
sbarry@repub.com

SPRINGFIELD - Following eight days of testimony in a federal voting rights trial, a judge announced yesterday that he may halt the court battle pending the outcome of a related petition before state lawmakers.

U.S. District Court Judge Michael A. Ponsor made the announcement on the heels of the plaintiffs' final witness. The judge asked lawyers in the case to research the status of a home rule petition that is before the Legislature and favors ward representation on the City Council. It was approved last year by the council and Mayor Charles V. Ryan.

Lawyers agreed to report back to Ponsor on Friday. Testimony has been suspended in the meantime.

"It's very important that I be respectful of the democratic autonomy in Springfield," Ponsor said in court. "I may consider the possibility of staying the litigation to allow that petition to move forward."

The petition proposes to change Springfield's nine-member at-large City Council in favor of a hybrid of eight members elected by ward and five elected at-large.

The plaintiffs in 2005 filed suit against the city, arguing for district representation under the Voting Rights Act. The litigants include local civil rights groups and black and Latino residents who argue the at-large system largely shuts out minority candidates.

The 8-5 petition was trumpeted as a compromise by a historically resistant City Council. But plaintiffs in the federal case deemed it inadequate, and forged ahead in court. Mediation talks between the parties fizzled late last year.

In order to be successful, the petition must gain approval from the House and Senate, and receive the governor's signature. It would then appear as a question on a future ballot, and would be decided by a majority of the voters.

The petition has not gotten far since the council approved it in June. According to an aide to the petition's sponsor, state Rep. Sean Curran, D-Springfield, it has been docketed but has not been assigned a bill number. Nor has it been scheduled for hearings, the aide said.

Curran did not return calls about the petition this week.

Another local lawmaker said the proposal will not gain steam until its backers make an effort to lobby legislators.

"There's never been a major push to get this bill going. Normally, when you have a home rule bill, the local elected officials are kind of knocking on your door to get this done. That hasn't happened," state Sen. Stephen J. Buoniconti, D-West Springfield, said.

A member of his own staff, Candice D. Lopes, testified for the plaintiffs this week. However, Buoniconti said the two have never discussed the issue.

In addition, the legislator said controversial bills - particularly ones that split local delegates - typically die before they get to a vote.

Two of five local House delegates also testified for the plaintiffs in the federal case: state Rep. Benjamin Swan, D-Springfield, and state Rep. Cheryl A. Coakley-Rivera, D-Springfield.

Coakley-Rivera could not be reached for comment yesterday. Swan said he would not support a bill without the plaintiffs' backing.

"I don't like the 8-5 proposal a lot, to be perfectly honest with you. I don't understand why we just can't go to the nine district members ... I'm convinced representative democracy is the best approach to democracy," Swan said yesterday.

©2007 The Republican

© 2007 MassLive.com All Rights Reserved.

# EXHIBIT B

# The Commonwealth of Massachusetts

MASSACHUSETTS SENATE
STATE HOUSE, ROOM 213B, BOSTON 02133
TEL: (617) 722-1291
FAX: (617) 722-1014

**GALE D. CANDARAS, Esq.**
**STATE SENATOR**
1ST HAMPDEN AND HAMPSHIRE DISTRICT

CHAIR, COMMITTEE ON MENTAL
HEALTH AND SUBSTANCE ABUSE

VICE-CHAIR, COMMITTEE ON
ELDER AFFAIRS

DISTRICT OFFICE
17 MAIN STREET
WILBRAHAM, MA 01095
TEL. (413) 599-4785
FAX (413) 596-3779

gale.candaras@state.ma.us
www.mass.gov/legis/member/gdco.htm

Att. Edward M. Pikula
City of Springfield
Law Department
36 Court Street
Springfield, MA 01103

March 19, 2007

Dear Attorney Pikula,

    This letter is in response to your request for information concerning the Home Rule Petition filed by Representative Sean Curran. The petition has not, to my knowledge, been given a bill number by the House Clerk but is being referred to the Joint Committee on Election Laws. Additionally I have not received notice of any hearings, readings or other legislative action on this measure.

Very Truly Yours,

Gale D. Candaras, Esq.
State Senator
1st Hampden & Hampshire

# EXHIBIT C

*The Commonwealth of Massachusetts*

HOUSE OF REPRESENTATIVES
STATE HOUSE, BOSTON 02133-1054

**SEAN F. CURRAN**
REPRESENTATIVE
9TH HAMPDEN DISTRICT

COMMITTEES:
Veterans and Federal Affairs
Housing
Labor and Workforce Development

DISTRICT OFFICE
430 Springfield Street
Springfield, MA 01107
Tel. (413) 746-2728

March 21, 2007

Attorney Edward Pikula
City Solicitor
Springfield City Hall
36 Court Street
Springfield, MA 01103

Dear Attorney Pikula,

I am writing to inform you that my office filed the home rule petition, concerning ward representation, back in January.

Currently the petition sits in the House Clerk's office and has been assigned the docket number 3519. Within two weeks, it will be assigned a bill number and passed along to the committee on election laws. Once in that committee, the bill will be given a hearing date. If the committee issues a favorable report, the bill will then move along to the committee on steering and policy where it will be taken and placed on the House Calendar. Once it is on the Calendar, membership will vote on the bill on the given date. If the House votes in favor of the bill, it will be passed along to the Senate. If the Senate votes in favor of this legislation, it will be sent to the Governor's desk for a signature or a veto.

I cannot accurately give a time table as to the passage of this legislation, as its success or failure is determinative by how much political support there is for the bill.

In any event, I can be contacted at 746-2728 if you need additional information on this or any other matter.

Sincerely

Sean Curran

# EXHIBIT D



*The Commonwealth of Massachusetts*

**HOUSE OF REPRESENTATIVES**
**STATE HOUSE, BOSTON 02133-1054**

ALAN F. **CURRAN**
REPRESENTATIVE
9TH HAMPDEN DISTRICT

COMMITTEES:
Veterans and Federal Affairs
Housing
Labor and Workforce Development

DISTRICT OFFICE
430 Springfield Street
Springfield, MA 01107
Tel. (413) 746-2728

March 12, 2007

Ms. Andrea Stone
Law Department
Springfield City Hall
36 Court Street
Springfield, MA 01103

Dear Ms. Stone,

This home rule petition was submitted by Representative Curran. It now is sitting in the House Clerk's office with the docket number 3519. Within a week and a half it will be given a bill number and then it will be sent to the committee on election laws. If you have questions or concerns do not hesitate to contact me or the Representative at 736-2728.

Sincerely,

William Baker



# The Commonwealth of Massachusetts

IN THE YEAR TWO THOUSAND    SIX

## AN ACT PROVIDING FOR THE ELECTION OF CITY COUNCILORS AND SCHOOL COMMITTEE PERSONS WITHIN THE CITY OF SPRINGFIELD.

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:*

SECTION 1.     Notwithstanding the provisions of chapter forty-three of the General Laws of the Commonwealth or any other general law or special law or any rule, regulation or ordinance to the contrary, there shall be thirteen (13) city councilors who shall constitute the city council of the city of Springfield, with all the rights, powers and duties vested in and exercised by said council.

Each member shall be elected for a term of two years; five (5) councilors shall be elected at large by the voters of the entire city; one (1) councilor shall be elected from each of the eight (8) separate wards within the city of Springfield, as defined in the ordinances of the city, as amended. An individual seeking election as a councilor for a separate ward shall be a resident of that ward and shall have been a resident of that ward for a period of at least one year prior to the deadline for submission of the individual's nomination papers to the city. The individual's nomination papers shall be signed in the

have been a resident of the city for a period of at least one year prior to the deadline for submission of the individual's nomination papers to the city. The individual's nomination papers shall be signed in the aggregate by not less than one hundred registered voters of the ward from which the separate ward councilor is to serve.

SECTION 2. Notwithstanding the provisions of chapter forty-three of the General Laws of the Commonwealth or any other general law or special law or any rule, regulation or ordinance to the contrary, the school committee shall consist of seven (7) members who shall constitute the school committee of the city of Springfield, with all the rights, powers and duties vested in and exercised by said school committee.

The school committee shall consist of the mayor, who shall be the chairman; two members elected at large by the voters of the entire city; one each shall be elected from the following combined districts: wards one (1) and two (2); wards three (3) and four (4); wards five (5) and six (6); and wards seven (7) and eight (8), within the city of Springfield as defined in the ordinances of the city, as amended. An individual seeking election as a school committee person for a district comprised of a combined ward shall be a resident within the district formed by the combined wards in which the individual is to serve, and shall have been a resident of the district formed by said combined wards for a period of at least one year prior to the deadline for submission of the individual's nomination papers to the city or in the case of an at large candidate shall have been a resident of the city for at least one year. The individual's nomination papers shall be signed in the aggregate by not less than one hundred registered voters residing in the district formed by the combined wards from which the individual school committee person is to serve. Each member shall be elected for a term of four years.

SECTION 3: Notwithstanding the provisions of any general or special law to the contrary, to ascertain the will of the people of the city of Springfield, the board of election commissioners shall cause the following binding public opinion question to be placed on the official ballot to be used in the city at the next regular municipal election to be held on the sixth day of November in the year two thousand and seven:

THIS QUESTION IS BINDING.

Shall the city council of the city of Springfield be composed of thirteen members; one from each of the eight wards elected from the voters of that ward of the city and five to be elected at large from all the voters of the city; shall the School Committee of the city of Springfield be composed of seven members including the Mayor and one from each of the districts formed by the combined Wards: one and two; three and four; five and six; seven and eight; and two members to be elected at large from all the voters of the city?

SECTION 4.If a majority of the voters voting on this binding question shall vote in the affirmative, the provisions of said act shall take effect at the next regular municipal election held in the city of Springfield.

*To the Honorable Senate and House of Representatives of the Commonwealth of Massachusetts in General Court assembled.*

*The undersigned, citizens of* ...Charles V. Ryan, Mayor of the City of Springfield,..........., *respectfully petition for the passage of the accompanying bill or resolve, and/or for legislation.*

in the name and on behalf of said City, and in the pursuance of an order, a duly attested copy of which is hereto annexed, petition the General Court for legislation entitled "An Act Providing for the Election of City Councilors and School Committee persons within the City of Springfield, "in substantially the same form as a draft Act attached hereto.

Respectfully submitted,

Charles V. Ryan, Mayor

City of Springfield
36 Court Street
Springfield, MA 01103

**Petitioners are requested to sign names and addresses legibly.**