## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISE FOR SOCIAL JUSTICE; ¿OISTE?; NEW ENGLAND STATE-AREA CONFERENCE OF THE NAACP; REV. TALBERT W. SWAN, II; NORMAN W. OLIVER; DARLENE ANDERSON; GUMERSINDO GOMEZ; FRANK BUNTIN; RAFAEL RODRIGUEZ; and DIANA NURSE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SPRINGFIELD and SPRINGFIELD ELECTION COMMISSION,<br><br>Defendants. | Civil Action No. 05-30080 MAP |

### PLAINTIFFS' SUBMISSION REGARDING STAY OF TRIAL PROCEEDINGS

Pursuant to this Court's March 19, 2007 Scheduling Order, Plaintiffs hereby submit the following memorandum regarding a stay of trial proceedings in this case. For the reasons set forth herein, it would be appropriate for the Court to stay this case pending the outcome of proposed legislation and the likely ballot question regarding a change to Springfield's method of electing its City Council and School Committee.

### I.  INTRODUCTION

#### A.  The Proposed Legislation And Referendum

As this Court knows, Springfield's current 9 member City Council and 6 member School Committee[1] are elected using an at-large election system. In October 2006, during the pendency

---

[1] The seventh member of the School Committee is the City's mayor, who serves as Chairperson.

of this litigation, the Springfield City Council passed an ordinance changing the number of City Councilors to 13, with 8 ward and 5 at-large seats; and changing the composition of the School Committee to two members elected at-large, and four members elected from the following combined districts: Wards 1 and 2; Wards 3 and 4; Wards 5 & 6; and Wards 7 & 8, with the Mayor as Chairperson (the "8 & 5 Plan"). The ordinance passed by the City Council requires that it be approved by the Legislature (as a Home Rule Petition) and that a binding referendum be placed on the November 2007 ballot, requiring the voters to approve the change. The change in the number of City Councilors, and the method of election of the City Councilors and School Committee members, will only take place if a majority of those voting vote in favor of the referendum. If the referendum passes it will become effective for the 2009 elections. The City's Home Rule petition is currently pending in the Massachusetts Legislature. As Plaintiffs reported in their March 21, 2007 Status Report, the current status of the 8 & 5 Plan in the Massachusetts Legislature is that it has been assigned a bill number, should soon be sent to committee, and has a prospect to pass in the near future.[2]

In 1997, a majority of those voting in the City election voted in favor of a ballot question that would have changed the method of election of City Councilors to one where 8 City Councilors were elected from the City's existing wards, and 3 were elected at-large. In contrast to the 8 & 5 Plan, which requires approval of only a majority of those voting in the November 2007 election, the 1997 referendum required approval by one third of the registered voter population, dooming it from the beginning because of low voter turnout that year. Even so, the

---

[2] After filing their Status Report on March 21, 2007, Plaintiffs learned that the bill has been referred to the Joint Committee on Election Laws, and a hearing on the bill is scheduled for Tuesday, March 27, 2007.

1997 referendum was approved by 58.4% of those casting either a "yes" or "no" vote for the question.[3]  *See* Defendants' Trial Exhibit 2j.

Dr. Engstrom's recent review and analysis of the United States Department of Justice's Spanish surname analysis, as well as testimony during trial regarding the apparently increasing Latino population in Springfield, indicate that there is a strong possibility that the 8 & 5 Plan could elect a Latino-preferred candidate in Wards 1 and 3. *See* March 16, 2007 Trial Transcript at 1099-1100 (indicating that 49.9% of registered voters in Ward 3, and in excess of 60% of registered voters in Ward 1, have Spanish surnames, and that Dr. Engstrom would expect the actual Latino Voting Age Population of those wards to be even higher). Additionally, the present demographics of Springfield's Ward 4 indicate that an African American candidate likely could be elected from that Ward. *See* March 14, 2007 Trial Transcript at 786 (indicating that Ward 4 is predominantly African American). In addition, current City Councilors Jose Tosado and Bud Williams have a significant opportunity to be elected to one of the five proposed at-large seats. Alternatively, one of them very likely could be elected from Ward 5, where they reside. Similarly, Ms. Marjorie Hurst has a significant opportunity to be elected to School Committee at-large, or from the combined Wards 7 and 8. Finally, Mr. Orlando Santiago testified that it would have been easier for him to be elected were he running out of a ward generally carved out of the area where he lives, in Ward 6, and that the Latino population there is growing. *See* March 12, 2007 Trial Transcript at 615-16. While Plaintiffs do not concede that the 8 & 5 Plan would be an adequate remedy were a violation of Section 2 found in this case, all of the aforementioned factors indicate that the 8 & 5 Plan may be capable of providing Latinos

---

[3]  Counting blank ballots, 51.4% of those voting in the 1997 election voted in favor of the ballot question. *See* Defendants' Trial Exhibit 2j.

and African Americans with improved opportunities to participate in the political process and elect candidates of their choice.

## II.   IT IS APPROPRIATE FOR THIS COURT TO STAY THIS CASE PENDING THE OUTCOME OF PENDING LEGISLATION AND A PROPOSED BALLOT QUESTION REGARDING THE 8 & 5 PLAN

### A.   Federal Courts Have Broad Discretion To Stay Cases

It is well established that federal district courts have broad discretion to stay cases. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). *See also Rhines v. Weber*, 544 U.S. 269, 276 (2005) ("District courts do ordinarily have authority to issue stays where such a stay would be a proper exercise of discretion." (internal citations omitted)); *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1154 (1st Cir. 1992). In determining whether to enter a stay, the factors which courts consider include, among others, the suggested rationale for issuing the stay; the suggested duration of the stay; and the competing equities. *See Marquis*, 965 F.2d at 1155. As demonstrated below, these factors all weigh in favor of staying the present action pending the outcome of the pending legislation and proposed ballot question regarding the 8 & 5 Plan.

### B.   A Stay Is Appropriate In A Voting Rights Case Where Pending Legislation May Impact Both The Challenged System And Any Potential Remedy

If the Court does not stay this litigation, it may be in the awkward position of trying to fashion a remedy where the voting system being challenged may not exist several months from now. Where legislation may affect a Section 2 case, it is appropriate for a Court to order a stay of the litigation to allow for evaluation of the impact of the legislation on the matter. *See*

4

*Bradley v. Work*, 916 F. Supp. 1446, 1451-52 (S.D. Ind. 1996). If the legislature is likely to act in the near future, a stay of litigation in a case alleging voting rights violations may be warranted even before legislation has been formally passed—indeed, even before it is pending. *See Arrington v. Elections Board*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (proceedings in redistricting case stayed to give legislature additional time to act where plaintiffs challenged state legislature's failure to create new districts following the 2000 Census).

Here, just as in *Bradley* and *Arrington*, principles of judicial economy, as well as deference to the state democratic process currently underway, dictate that this Court should stay the instant case. In *Bradley*, the court noted that it had stayed the proceedings for approximately four months after briefing on summary judgment motions was complete so that the plaintiffs could assess the effect of new legislation on their suit. *See Bradley*, 916 F. Supp. at 1451-52. Only after the stay did the court consider the merits of the original dispute. *See id.* at 1452. The *Bradley* court also noted that in light of the new legislation and changed electoral structure, it was too early for the court to decide whether there was a Section 2 violation under the new system. *See id.* at 1464, 1474. Here, Plaintiffs do not concede that passage of the 8 & 5 Plan would necessarily result in this Court being unable to decide their original claims, but Plaintiffs support the concept of a stay to permit the democratic process to run its course.

Staying the litigation now is also consistent with case law dictating that, where state legislative or other bodies have begun to change districting systems, federal courts should defer consideration of the merits of claims challenging those districting systems while state entities develop constitutionally valid plans. Federal courts are required "to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself . . . reapportionment is primarily the duty and

5

responsibility of the State through its legislature or other body, rather than of a federal court. Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe v. Emison*, 507 U.S. 25, 33-34 (1993) (internal citations and quotations omitted). *See also Reynolds v. Sims,* 377 U.S. 533, 586 (1964) ("legislative reapportionment is primarily a matter for legislative consideration and determination, and … judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."); *Arrington v. Elections Board*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (staying proceedings in redistricting case to give legislature additional time to act). While this case does not involve reapportionment or redistricting, such cases provide guidance because they present similar circumstances and judicial concerns. Here, just as in a redistricting case, if the Court does not issue a stay, it may find itself fashioning a remedy that conflicts with a system soon to be put in place through the democratic process. Plaintiffs respect the Court's expressed concerns about the role of a federal court passing judgment on a voting system that the Commonwealth's democratic processes may be about to change. Therefore, Plaintiffs support the concept of a stay.[4]

### C.  Defendants' Stated Jurisdictional Concerns Have No Merit

Defendants have argued that if the 8 & 5 Plan were passed, it would not present a case or controversy for this Court to decide. To the extent Defendants argue that the 8 & 5 Plan has not been litigated in this case, Plaintiffs have no plans to litigate in this case the validity of the 8 & 5 Plan under Section 2 in the event the voters approve the 8 & 5 Plan. Plaintiffs acknowledge there is no case or controversy at this time regarding whether the 8 & 5 Plan violates Section 2,

---

[4] This Court, for example, granted a stay to permit settlement discussions in *Vecinos De Barrio Uno v. City of Holyoke*, 960 F. Supp. 515, 516 (D. Mass. 1997), before continuing to hear testimony on remand.

6

as no such plan is in place. Unless and until that proposed plan passes, however, the case and controversy regarding the current at-large system remains alive.

The mere possibility that the system will change due to a ballot question also does not moot or deprive the court of jurisdiction over Plaintiffs' claims. As the court noted in *Arrington v. Elections Bd.*, "contingent future events generally do not deprive courts of jurisdiction." 173 F. Supp. 856, 863 (E.D. Wis. 2001) (addressing potential future changes to a district's Congressional apportionment plan). A claim for injunctive relief becomes moot for lack of a case or controversy if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Siegel v. LePore,* 234 F.3d 1163, 1173 (11th Cir. 2000) (noting that "[i]n view of the complex and ever-shifting circumstances of the case, we cannot say with any confidence that no live controversy is before us"). *See also Lawyer v. Dep't of Justice,* 521 U.S. 567, 579-580 (1997) (finding that the case presented "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion [because it involved] . . . the settling of some dispute which affects the behavior of the defendant towards the plaintiff"). The dispute between plaintiffs and defendants remains unresolved. As the Sixth Circuit explained in *Stewart v. Blackwell,* "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." 444 F.3d 843, 855-56 (6th Cir. 2006) (internal citations omitted) (finding that the defendant's voluntary change of behavior

7

could not meet the "heavy burden" to moot a case). Here, defendants cannot meet their burden, and the case continues to present a live case or controversy.[5]

### D. A Stay Will Not Extend Beyond November 2007, And Will Not Prejudice Defendants Or Voters

Defendants argue that they do not want a lawsuit indefinitely pending and hanging over the City of Springfield and its voters. However, a stay either until a definitive determination as to the status of the 8 & 5 Plan in the state legislature, or the outcome of the likely November 2007 referendum question, would amount to a delay of just several months, and not longer than until the end of this year. The several years' long delay that Defendants envision will not come to pass. If the state legislature does not pass the 8 & 5 Plan, Plaintiffs are prepared to return to trial promptly upon a determination that no ballot question regarding the 8 & 5 Plan will appear on the November 2007 ballot. If the 8 & 5 Plan does appear on the November 2007 ballot as a referendum question, and fails to pass, Plaintiffs are prepared immediately to return to trial, if need be, in November 2007. Regardless of the outcome of the 8 & 5 Plan in the legislature or at the hands of the voters, Defendants are practically guaranteed a resolution of the case as a whole, and at least as to liability, before the end of 2007.

Furthermore, given the realities under which the parties and the Court are currently operating, it is unlikely that there would be enough time to devise a remedy, complete appellate review, and implement a new election system before the 2007 election even if trial continued immediately, and a violation were found. The voters therefore are unlikely to be prejudiced by voting under the current at-large system in 2007, because, as a practical matter, there may be

---

[5] A rule that eradicated the court's jurisdiction simply based on *proposed* or *potential* legislation would allow the city to continually evade judicial review of its plan. Courts have jurisdiction to hear cases, even absent a live case or controversy, if the issue otherwise would be "capable of repetition but evading review." *McIntyre v. Fallahay,* 766 F.2d 1078, 1082 (7th Cir. 1985). Here, if defendants' mere proposal to change legislation

8

insufficient time to implement changes to the election system before the September primary and/or November general election.

### III. CONCLUSION

For all of the foregoing reasons, this Court should stay this action pending the outcome of the pending legislation regarding the 8 & 5 Plan, and the outcome of the voter referendum on the 8 & 5 Plan.

                                              Respectfully submitted,

ARISE FOR SOCIAL JUSTICE; ¿OISTE?; NEW ENGLAND STATE-AREA CONFERENCE OF THE NAACP; REV. TALBERT W. SWAN, II; NORMAN W. OLIVER; DARLENE ANDERSON; GUMERSINDO GOMEZ; FRANK BUNTIN; RAFAEL RODRIQUEZ; and DIANA NURSE

By their attorneys,

    /s/ Paul E. Nemser
Paul E. Nemser (BBO #369180)
Monica M. Franceschini (BBO #651208)
Anna-Marie L. Tabor (BBO #662364)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

---

were sufficient to deny the court jurisdiction over plaintiff's Section 2 claim, defendants could continually evade judicial review by proposing new legislation—however speculative—whenever a challenge was raised.

|  |  |
|---|---|
|  | /s/ Nadine Cohen |
|  | Nadine Cohen (BBO #090040) |
|  | LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW OF THE BOSTON BAR ASSOCIATION |
|  | 294 Washington Street, Suite 443 |
|  | Boston, MA 02108 |
| Dated: March 22, 2007 | (617) 988-0609 |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Submission Regarding Stay of Trial Proceedings was filed electronically with this Court on this 22nd day of March, 2007 and that all parties will be served via the Court's electronic filing system.

/s/ Paul E. Nemser
Paul E. Nemser (BBO #369180)

LIBA/1774993.3

10